**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **GABRIEL VALDEZ AND CYNTHIA HACK,** | § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | **CIVIL ACTION NO:5:25-cv-438** |
| | § § | |
| **WELLMED MEDICAL MANAGEMENT, INC.  AND UNITEDHEALTH GROUP, INC.** | § § § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiffs GABRIEL VALDEZ ("Mr. Valdez") and CYNTHIA HACK ("Mrs. Hack")(collectively, hereinafter "Plaintiffs") in the above-entitled and numbered cause and file this *Plaintiffs' Original Complaint*, complaining of and about WELLMED MEDICAL MANAGEMENT, INC. AND UNITEDHEALTH GROUP, INC. (hereinafter "Defendants") and for cause of action would respectfully show the Court and Jury the following:

### I.    INTRODUCTION

1. This is an action involving two whistleblowers alleging they suffered adverse employment actions because they reported illegal, unlawful, and fraudulent use of federal funds by Defendants.

2. Defendants have engaged in systematic fraud against federal and state healthcare programs through an elaborate scheme involving kickbacks, fraudulent billing practices, and bid

manipulation, resulting in millions of dollars in false claims submitted to Medicare and Medicaid.

## II.    REGULATORY AND STATUTORY FRAMEWORK

3.  The Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., is a federally funded health insurance program for elderly and disabled persons.

4.  The Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a jointly funded federal-state health insurance program for low-income persons.

5.  The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits the knowing and willful payment of remuneration to induce or reward patient referrals or the generation of business involving any item or service payable by federal healthcare programs.

6.  The False Claims Act ("FCA") provides a "whistleblower" provision.

7.  The "whistleblower" provision of the FCA, also known as a qui tam suit, protects employees who take steps to uncover and report an employer's fraudulent submission of claims to the government. *Robertson v. Bell Helicopter Textron, Inc*., 32 F.3d 948, 951 (5th Cir. 1994). Specifically, the statute states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

> 31 U.S.C. § 3730(h).

8.  The False Claims Act protects whistleblowers from retaliation and allows them to report fraud against the government.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

9. "Qui Tam" suits enable private individuals to initiate legal action if their employer defrauds the government.  Plaintiffs are separately filing, under seal, the evidence and records related to their "Qui Taim" claim while they proceed forward with their allegations of retaliation in this Complaint.

### III.    PARTIES

10. Plaintiff GABRIEL VALDEZ is an individual residing in Bexar County, Texas, and was employed by Defendants prior to suffering an adverse employment action.

11. Plaintiff CYNTHIA HACK is an individual residing in Bexar County, Texas, and was employed by Defendants prior to suffering an adverse employment action.

12. Defendant WELLMED MEDICAL MANAGEMENT, INC., (hereinafter "WELLMED") is an Domestic Professional Company doing business in San Antonio, Texas. Defendant may be served with process by serving its registered agent C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201. **Service of Summons is requested at this time.**

13. At all relevant times, Defendant WELLMED provided healthcare services and products to Medicare and Medicaid beneficiaries.

14. Defendant, UNITEDHEALTH GROUP, INC. (hereinafter "UHG") is a Foreign For-Profit Corporation doing business in the State of Texas that may be served with process by serving any officer, managing or general agent, or any other agent authorized by appointment or by law to receive of process at its office located at 5959 Northwest Pkwy, San Antonio, Texas 78249, pursuant to Federal Rule of Civil Procedure 4(h)(1)(B).  A copy of the lawsuit will also be mailed to the Defendant at this address. **Service of Summons is requested at this time.**

15. At all relevant times, Defendant UHG provided healthcare services and/or products to Medicare and Medicaid beneficiaries.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

### IV.    JURISDICTION AND VENUE

16. Subject matter jurisdiction is proper in this court because the amount in controversy is within the jurisdictional limits of the court in which Plaintiffs now sue. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a), based upon diversity of citizenship and an amount in controversy exceeding seventy-five thousand dollars ($75,000.00).   It is further proper under federal question.

17. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because Defendants can be found in, reside in, and/or transact business in this District, and because many of the violative acts described herein occurred within this District.

### V.    MISNOMER, ALTER-EGO, ASSUMED NAME

18. In the event any parties are misnamed or not included herein, it is Plaintiffs' contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named here in.

19. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### VI.    FACTS

20. On or around 2011, UnitedHealth Group, INC., acquired WellMed Medical Management, INC., via its Optum health services division.

21. Per it's website, WellMed was founded in 1990 by Dr. George M. Rapier III, as a single clinic in San Antonio, Texas, with the purpose of delivering proactive, preventive care and build strong relationships with senior patients.

22. Today, WellMed is a comprehensive network of doctors, specialists, and medical professionals dedicated to caring for over 1 million older adults across more than 16,000 offices in Texas

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

and Florida. WellMed advertises itself as specializing in managing chronic conditions such as diabetes and heart disease, with specialties to include cardiology, podiatry, dermatology, rheumatology, neurology, palliative care, wound care, and hospital medicine.

23. WellMed's "business model" as advertised operates on a physician-owned, patient-centered model similar to an Accountable Care Organization (ACO).

24. WellMed offer letters are paid to Optum.

25. WellMed operates as a medical management company focusing on serving seniors, with its largest markets being in Texas and in Florida, and each market containing "submarkets."

26. Both Plaintiffs, in their course and scope of employment, served submarkets for Defendants.

27. WellMed services these seniors in these markets and submarkets through Medicare Advantage plans in addition to general medical practices and procedures.

28. UnitedHealth Group, through its UnitedHealthcare division, operates Medicare Advantage plans that WellMed works within. Specifically:

    a. Medicare pays UnitedHealthcare a fixed monthly amount per enrolled member through a capitation payment;

    b. WellMed's physicians, medical providers, and clinics then provide care under a value based model that includes taking on responsibility for managing care, receiving incentives for meeting quality metrics, conducting preventive care and chronic disease management, and using risk adjustment coding to document patient conditions that affect payments.

    c. Medicare funds are used for:

        i. Lease all of the clinics throughout all markets they worked;

        ii. Use funds for building maintenance;

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

    iii.   Acquisition of real estate property;

    iv.   Renovations, design and building properties, including doctors clinics and offices;

    v.   Services provides to general contractors, preferred vendors, and architects;

    vi.   Direct patient care and medical services;

    vii.   Administrative overhead and operations;

    viii.   Health information technology systems;

    ix.   Care coordination programs;

    x.   Quality improvement plans and initiatives;

    xi.   Network management; and

    xii.   Compliance and regulatory requirements.

29. Defendants have reporting obligations to the Centers for Medicare and Medicaid Services ("CMS") for how Medicare dollars are spent, including information related to the medical loss ratios, quality metrics achievement, network adequacy, marketing guideline requirements, appeals, and grievances, and the funds used from reimbursements.

30. Medicare Advantage payments received by Defendants contribute to their overall revenue. From the revenue generated, portions are allocated to capital expenditure funding and/or capital investments, which include construction and facility development.

31. Medicare has specific parameters and provisions for capital related costs in certain payment systems, which can include depreciation, interest, rent and/or lease payments, which are typically factored into reimbursement rates.

32. It is illegal to knowingly and willfully offer, pay, solicit or receive remuneration to induce referrals of items or services covered by Medicare, Medicaid and other federal programs,

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

including facility development and construction bids and projects.

33. Since at least March 2018, Defendants have engaged in an illegal and unlawful kickback scheme, false claims submissions, bully and harassing of employees, bid manipulation, and retaliation against whistleblowers, including both Plaintiffs.

34. Dr. George Rapier sold part of his business to Defendant WellMed and kept part of the business. The portion of his company that dealt with Medicare funding and federal money was privately owned. HMO operations were sold to Optum Health.

35. Working under Dr. George Rapier are Luis Casas of Casas Group and then Associate Director but now Vice President of WellMed Casey Sierer.

36. Luis Casas and the Casas Group worked closely with VP Casey Sierer to approve bids in a predetermined manner on behalf of the Casas Group.

37. The Casas Group provides construction services for WellMed and UHG.

38. Luis Casas operates as a vender with Defendants as well.

39. Casey Sierer became a Vice President of WellMed on or around mid-2022.

40. Casey Sierer and Luis Casas frequently engaged in kickbacks. Sierer was a recipient of these kickbacks from Luis Casas.

41. Numerous kickback gifts have included Louis Vuitton purses, which is how this first became known to employees, including reports of this illegal conduct by Plaintiffs.

42. Luis Casas gave Casey Sierer $10,000.00 cash to pay Casey and his then wife for Christmas in 2022.

43. The kickbacks included other trucks, trips to Las Vegas, trips to Disney World, and fishing trips for Casey Sierer and Leonard McDonald.

44. Plaintiff Hack became aware that Manager of Environmental Services Christina Elizondo was

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

in a relationship with Luis Casas by March 2018. Ms. Elizondo received a tummy tuck, breast augmentation, and a Luis Vuitton bag, and high end purses and belts as kickbacks from Casas.

45. Ms. Elizondo informed Plaintiffs that after closing each project, Casas and her would go to Las Vegas and celebrate, for which Casas would pay.

46. Plaintiffs initiated several compliance investigations after learning about the kickbacks. UHC alleged that a compliance investigation took place, but the illegal kickbacks and illegal spending of federal funds continues.

47. Luis Casas purchased a Toyota Tundra truck for Casey Sierer and Leonard McDonald.

48. Defendant WellMed, owned and operated by Defendant UHG, hired Plaintiff Cythnia Hack in 2018.

49. Ms. Hack was rehired in 2020 after returning from a military transfer with her spouse to the United Kingdom.

50. Ms. Hack was employed as Senior Project Manager for Defendants.

51. Ms. Hack earned $104,000.00 in salary and a yearly bonus between $6,000.00 and $10,000.00.

52. Ms. Hack received annual performance evaluations that were, prior to complaining of illegal use of funds, all positive.

53. Ms. Hack's area was the Dallas market, to which she traveled every week.

54. Plaintiff Gabriel Valdez was hired on or around February 15, 2021 as Senior Project Manager.

55. Defendants paid Mr. Valdez $96,000.00 annually.

56. After both Plaintiff's complained, a campaign of harassment and bullying ensued against them orchestrated by Defendants.

57. Associate Director Jessica Chairez was given the promotion over both Plaintiffs and other qualified candidates.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

58. Chairez has repeatedly ignored issues brought to her attention regarding illegal use of federal funds.

59. Senior VP Mark Feinberg did not follow WellMed's posting requirements for the position Chairez was promoted.

60. This became a pattern that there were promotions completed in violation of WellMed's policies and procedures over Plaintiffs, particularly after they complained of illegal use of federal funds.

61. Both Plaintiffs have greater education qualifications, including their Masters Degrees in the relevant industry and field.   The job posting had no educational requirement, but did require experience at a senior leadership role.  Associate Director Jessica Chairez did not have this required experience.

62. On or around mid-August 2022, Associate Director Jessica Chairez was promoted two levels above her position, despite lacking the requisite qualifications listed for the job description, in violations of WellMed's policies and procedures.

63. WellMed requires employees to meet certain parameters, including being employed by WellMed for at least a year, and that employees cannot be promoted more than "one level" at a time when being considered for promotions.

64. Additional employees were promoted over Plaintiffs in violation of WellMed's own policies and procedures.

65. This pattern of employees being promoted over Plaintiffs continued through the end of their employment

66. Ms. Hack's market was the Dallas area, for which she travelled to every week.

67. After Ms. Hack and Mr. Valdez reported the illegal, fraudulent and unlawful use of federal

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,
AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

funds to WellMed Vice President Keith McMullen, nothing was done to report it by McMullen. This report included that one of VP Keith McMullen's staff was using credit cards to steal from the company including a fraudulent charge to a vendor.

68. Further, UHG did not report it to the government or to its board of directors.

69. McMullen repeatedly did not take action to report the illegal use of federal funds.

70. Instead, when being told about illegal and unlawful use of federal funding, McMullen put his fingers in his ears and said "lalalalalal-I don't want to hear it."

71. McMullen was aware that former employees embezzled funds with corporate credit cards.

72. Instead of notifying the government of the stolen funds, some of the employees were terminated.

73. Ms. Hack notified McMullen that the law required that Defendants file a police report due to the amount of money stolen. No police report was ever filed by Defendants.

74. Additionally Both Plaintiffs complained of illegality, Medicare fraud, unlawful conduct, and fraudulent use of federal funds internally to Mark Feinberg, Keith McMullian, and the Compliance team, leading to subsequent investigations by Michael Ophoven.

75. Per UHG's website, The Centers for Medicare & Medicaid Services (CMS) and other federal and state regulators require that UnitedHealth Group and its affiliate organizations communicate and monitor specific compliance and fraud, waste and abuse requirements to employees and delegated entities (delegates) – including first tier, downstream and related entities (FDRs). In the event of a CMS, federal or state audit, our organization must demonstrate that they evaluate their delegates' compliance with program requirements, including effective monitoring and oversight of such delegates.

76. After repeated internal reports to Defendants without the end of the illegal and unlawful use of

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

federal funds, Ms. Hack went to the FBI to report the fraud, illegal activity, and the exploitation of Medicare funds.

77. Ray Silva-Reyes reported the fraud to the San Antonio Express News. Ray was terminated by Defendants.

78. Every year except for her final year with Defendants, Ms. Hack and Gabriel Valdez received 4s and 5s out of their performance reviews.

79. During Ms. Hack's final year of employment, after reporting illegal use of federal funds, she received 2s and 3s in her performance reviews.

80. Ms. Hack was never reprimanded nor provided any type of counseling, discipline, or coaching statements prior to any complaints of illegal, fraudulent, and unlawful use of federal funds.

81. Plaintiff Hack contends she was treated less favorably than non-whistleblowers and that she had been passed over for jobs, harassed, bullied, and threatened, fearing for her safety, sanity and health.

82. As a result, Ms. Hack was constructively discharged on or around June 19, 2023.

83. Meanwhile, Mr. Valdez was placed in a slow market after he complained of illegal activity and Medicare fraud.

84. On or around July 18, 2022, VP Casey Sierer re-assigned Mr. Valdez to the Design & Construction sector in the Florida Market.

85. Mr. Valdez had been asked to work the Dallas Market prior to complaining. As soon as Mr. Valdez complained, Ray Reyes was sent to Florida and Mr. Valdez got terminated.

86. In addition to Plaintiff's, other employees tried to stop the illegal use of federal funds.

87. For example, Yvette Allen notified the now COO of WellMed Kyle Campbell of illegal fraud and unlawful spending of federal funds.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

88. COO Campbell represented that an internal investigation was being conducted as a result.

89. Defendant WellMed uses ServiceNow program for maintenance.

90. ServiceNow is a third-party platform that helps WellMed manage the bidding process, including through vendor management and contract approval and management.

91. ServiceNow is a cloud-based software platform that helps businesses manage IT services, operations, and customer service. It also automates workflows to provide human resources to conduct services such as building maintenance and other services.

92. Pursuant to WellMed's internal processes and procedures, ServiceNow is to help create a system for the bidding process. This bidding process is to inform the contractor and in some cases several contractors by email or phone of the upcoming work available, allowing them to send their proposals to Casey Seirer and Mark Feinberg.

93. However, WellMed allows external third parties such as Luis Casas of the Casas Group, to allow themselves access to ServiceNow.  Luis Casas accessed ServiceNow to enter his own work orders and monitor/update work orders entered by WellMed staff.  Casas additionally changed the allocation of the assignee to himself.

94. The Casas Group awards itself work orders with ServiceNow from WellMed, regardless of assignees by WellMed Staff.   Luis Casas assigns his own work orders for work that falls under building/contractor warranties, typically one year in length.

95. Luis Casas also assigns himself work orders to repaint however many clinics he is able each year, whether or not a request or need for repainting is made or required.

96. Vice President Keith McMullin spearheads the ServiceNow internal database system with WellMed.

97. Vice President Keith McMullin provided the Casas Group with the access to WellMed's

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

ServiceNow platform.

98. By Casey Seirer and Mark Feinberg awarding Luis Casas the bids, Luis Casas and the Casas Group were able to make bids with exorbitantly higher prices than other bids and still be guaranteed the work, making millions of dollars off the projects.

99. Casey Seirer and Mark Feinberg award the bids to Luis Casas with a higher price.

100.  Change orders were made on behalf of the contractors to make at least hundreds of thousands of dollars.

101.  Clinics were built under these bids, and then "needed repairs," including repeatedly repairing the same blinds at clinics for exorbitant costs, were run through the ServiceNow platform.

102.  Double, triple, quadruple, and other repeat and "double billing" occurs through some of the change orders.

103.  These false change orders were made by Luis Casas and approved by Defendants.

104.  For example, on or around May 2023, Ms. Hack received a 4th change order from Luis Casas of the Casas Group for blinds for a 3,000 square foot clinic for a Dr. Stedman's office. Despite Ms. Hack's protests, Associate Director Jessica Chairez said to push through the change order, because Casey Seirer would approve the change order anyway.

105.   Ms. Hack repeatedly reported this double billing and other double billing to VP Casey Sierer.  Casey Sierer would ignore these complaints and require employees of Defendants to submit the work orders and change orders, even though they are and illegal use of federal funds.  These change orders were required to go through a formal process requiring signatures of senior leadership.

106.  Ms. Hack had also reported the illegal use of federal funds to Associate Director Jessica

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

Chairez, who responded with silence.

107.   Both Plaintiffs contend they were bullied and harassed for reporting illegal use of federal funding.

108.   Other employees have since left and notified Mark Feinberg of the Real Estate Department for WellMed of this corruption, but nothing was done to stop the bid manipulation.

109.   Luis Casas and the Casas Group continue to award themselves bids, access the invoice themselves, and confirm they benefit over more financially sound and reasonable bids by other construction companies.

110.   Former VP, Jerry Van Vactor, brought to the attention of Mark Feinberg that he said it wasn't safe to have a vendor such as Luis Casas have access to our Peoplesoft system.  Feinberg continued to allow Luis Casas to login to a WellMed restricted financial system to monitor his invoices and subsequent payments. Luis Casas was also able to view payments due to other contractors. Van Vactor left WellMed shortly after bringing to the attention of leadership and not getting the support he asked for in reporting and stopping this illegal behavior.

111.   Not only is this behavior illegal and unlawful bid manipulation in violation of the FCA, but it is further impacting other architect firms and construction groups.

112.   For example, Ginger Dawley owns an architect firm called Dawley Group, and has been working for WellMed Senior Vice President Mark Feinberg for over 20 years.

113.   Dawley Group has been an architect for WellMed for over 20 years.

114.   Ginger had project she came in and bid on project and Luis Casas' project came in at a cost that was $600,000 greater than Ginger Dawley.  Despite this increased expense, the bid was awarded to Luis Casas.  Casey Sierer notified Ms. Dawley that the award would go to Luis Casas.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

Page **14** of **20**

115.    Luis Casas made clear he was going to "take her down" in reference to Ms. Hack. This

comment was made in response to Luis Casas learning Hack had reported to Casey Seirer about

illegal charge orders at clinics.

116.    Upon information and belief, additional bid manipulation and rigging is being done in the

Dallas submarket.

117.    Specifically, Yvette Allen notified Ms. Hack that a clinic in Dallas was being renovated

and provided a year warranty.  Months into completion of the project, the doctor of the clinic

complained that the motion sensor lights go off too soon.  Luis Casas of the Casas Group had

a work order placed through the ServiceNow and double billed the work.

118.    Yvette Allen refused the work order, but it was still approved to bill it to WellMed, even

though Casas had been paid 2 million dollars already for the project.   Yvette Allen quit as a

result of this fraud she did not want any part in.


### VII.        CAUSES OF ACTION AGAINST BOTH UNITEDHEALTH GROUP AND WELLMED

***Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(h)***

119.    The temporal proximity between Plaintiffs' protected activities and the adverse

employment actions they suffered further supports the causal connection between their

whistleblowing activities and Defendants' retaliatory conduct.

120.    Defendants' stated reasons for the adverse employment actions against Plaintiffs were

pretextual, as evidenced by Plaintiffs' prior positive performance evaluations, the selective

enforcement of policies against Plaintiffs but not other employees, and the pattern of promoting

less qualified individuals over Plaintiffs only after Plaintiffs engaged in protected activity.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,
AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

121.    Plaintiffs are entitled to all relief necessary to make them whole pursuant to 31 U.S.C. § 3730(h)(2), including reinstatement with the same seniority status that they would have had but for the discrimination, double back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

122.    Plaintiff's are protected whistleblowers who brought and/or took steps in furtherance of brining a qui tam lawsuit under the FCA, and are entitled to protections from being discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against because of lawful acts done by them in furtherance of an action under the FCA.

123.    Plaintiff's each independently allege (1) they engaged in activity protected under the statute; (2) their employer knew they engaged in protected activity; and (3) that they were discharged because they engaged in this protected activity.

124.    Plaintiffs' actions were objectively reasonable.   Plaintiffs actions were motivated by a reasonable belief that Defendants were violating and would soon violate the law.

125.    Plaintiffs reportes were also intended to stop contractors from defrauding the government.

126.    Plaintiffs' opposed double billing of Medicare, opposed the fraudulent inducement of contracts, disclosed bid-rigging, and did so repeatedly.

127.    Both Plaintiff's further allege that they took affirmative steps toward exposing the false claims, includeing complaining about the fraud.

128.    This lawsuit is now filed as a result of the reatliation and for the furtherance of Plaintiffs' efforts to stop 1 or mor violations under Section § 3730(h).

129.    Supervisors were notified by both Plaintiffs.

130.    Plaintiffs contend that their reports themselves are protected activity.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

131.    Specifically, both Plaintiff's reported and opposed internally that the conduct was fraudulent, illegal, unlawful, and false use of federal funds.

132.    Ms. Hack further reported the fraudulent, unlawful, and illegal nature of the activity to the FBI.

133.    Mr. Valdez was reassigned from his initial job duties, provided a slower market, provided reprimands, and terminated, constituting prohibited retaliation.

134.    Ms. Hack was provided written reprimands, harassed, bullied, threatened, and constructively discharged, constituting prohibited retaliation.

**VIII.    RESPONDEAT SUPERIOR AGAINST DEFENDANTS**

135.    Plaintiffs repeat and reallege each and every allegation contained herein. At the time of the occurrence and immediately prior thereto, Defendants employees:

     a.    Were within the course and scope of their employment with Defendant UNITEDHEALTH GROUP and/or WELLMED;

     b.    Were engaged in the furtherance of Defendants businesses;

     c.    Were engaged in accomplishing a task for Defendants;

136.    Therefore, under the doctrine of respondeat superior, Defendants, UNITEDHEALTH GROUP and WELLMED are vicariously liable for the conduct of their managers, supervisors, vice principals, owners, operators, and employees' conduct, further outlined elsewhere in this Complaint and incorporated by reference here fully.

137.    Plaintiff therefore invokes the doctrine of Respondeat Superior against Defendants UNITEDHEALTH GROUP and WELLMED.

**IX. AGENCY**

138.    Plaintiffs repeat and reallege each and every allegation contained herein.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

139.    At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions of any such agent, representative, or employee of Defendants occurred within the scope of the actual or apparent authority of such person on behalf of Defendants. Therefore, Defendants are liable to Plaintiffs for the acts and/or omissions of any such agent, representative, or employee complained of herein by virtue of such agency relationship.

## X. DAMAGES

140.    Plaintiffs, as a direct and proximate result of Defendant's breach of duty, were caused to suffer serious and permanent personal injuries to their bodies generally. Accordingly, the damages and penalties in this case are calculated as follows:

(a)    Double back pay, plus interest;

(b)    mental anguish suffered in the past;

(c)    mental anguish which, in all reasonable probability, will be suffered in the future;

(d)    loss of wages and earning capacity which, in all reasonable probability, will be sustained in the future;

(e)    Interest on damages (pre and post-judgement) in accordance with the         law;

(f)    Actual damages;

(g)    Costs of Court;

(h)    Costs of copies of depositions and any other recoverable expenses; and

(i)    Numerous other out-of-pocket expenses and pecuniary expenses.

## XI. INTEREST

141.    Plaintiffs further requests both pre-judgment and post-judgment interest on all their damages as allowed by law.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

## XII. DEMAND FOR JURY TRIAL

142.    Plaintiffs demand a trial by jury. Plaintiffs acknowledge payment on this date of the required jury fee.

## XIII. DESIGNATED E-SERVICE EMAIL ADDRESS

143.    The following is the undersigned attorney's designated E-Service email address for all e-served documents and notices, filed and unfiled: trey@harperlawtx.com and veronica@harperlawtx.com . This is the undersigned's only E-Service email address, and service through any other email address will be considered invalid.

## XIV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendants be cited to appear and answer herein; that, on final hearing of this cause, Plaintiffs have judgment against Defendants for actual damages, compensatory damages, pecuniary damages, interest, costs, and punitive damages in an amount deemed to be just and fair by the Jury, which will be a sum within the jurisdictional limits of this Court; prejudgment interest and post-judgment interest at the maximum rate provided by law; court costs; and all other relief to which Plaintiffs are justly entitled.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*

Page **19** of **20**

Respectfully submitted,

**HARPER LAW FIRM**
18618 Tuscany Stone, Ste. 210
San Antonio, Texas 78258
(210) 780-3881; Telephone
(210) 876-1891; Facsimile
michael@harperlawtx.com


BY: _/s/ Thomas N. Cammack, III_____
    TAYLOR W. HARPER
    State Bar No. 24091573
    taylor@harperlawtx.com
    THOMAS N. CAMMACK, III
    State Bar No. 24073762
    trey@harperlawtx.com

    **ATTORNEYS FOR PLAINTIFF**


*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,*
*AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' ORIGINAL COMPLAINT*