**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **GABRIEL VALDEZ AND CYNTHIA HACK,** | § § § § § | |
| *Plaintiffs,* | § § | |
| **v.** | § § | |
| | § | **CAUSE NO. 5:25-CV-00438** |
| **WELLMED MEDICAL MANAGEMENT, INC. AND UNITEDHEALTH GROUP, INC.,** | § § § § | |
| *Defendants.* | § § § § | |

**DEFENDANT WELLMED MEDICAL MANAGEMENT, INC.'S**
**MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 1

III.  DISMISSAL STANDARDS ..................................................................................... 2

      A.    Failure to State a Claim Under Rule 12(b)(6) ......................................... 2

      B.    Insufficiency of Process and Service of Process .................................... 3

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RETALIATION UNDER THE
      FALSE CLAIMS ACT ............................................................................................. 4

      A.    Plaintiffs Did Not and Cannot Adequately Plead They Engaged
            in Protected Activity under 31 U.S.C. § 3730(h) .................................... 5

            1.    Plaintiffs inadequately plead conduct that could
                  plausibly lead to a viable claim under the False Claims
                  Act. ................................................................................................ 5

            2.    Plaintiffs inadequately plead that they made protected
                  internal reports of FCA violations .............................................. 8

      B.    Plaintiffs Inadequately Plead That Plaintiff Hack Suffered Any
            Adverse Employment Action ................................................................... 9

      C.    Plaintiffs Inadequately Plead Plaintiff Valdez Was Subjected
            to Retaliatory Harassment, Failure to Promote, or
            Reassignment .......................................................................................... 12

      D.    There Are No Well-Pleaded Facts from Which to Infer
            Plaintiffs' Purported Protected Activity Caused Adverse
            Employment Actions ............................................................................... 13

V.    PLAINTIFFS' SERVICE OF A DEFECTIVE SUMMONS WARRANTS
      DISMISSAL ............................................................................................................ 16

VI.   DISMISSAL WITH PREJUDICE IS APPROPRIATE ........................................... 17

VII.  CONCLUSION ....................................................................................................... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*,
635 F.2d 434 (5th Cir. 1981) .................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 2, 3, 15

*Barrera v. Austin Indep. Sch. Dist.*,
No. 1:24-cv-490-DAE, 2025 U.S. Dist. LEXIS 34589 (W.D. Tex. Feb. 25,
2025) ...................................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................3

*Benfield v. Magee*,
945 F.3d 333 (5th Cir. 2019) .....................................................................3

*United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*,
816 F.3d 315 (5th Cir. 2016) ......................................................... 4, 10, 12

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) ......................................................................2

*Crossen v. Bernstein*,
91 Civ. 3501 (PKL), 1994 U.S. Dist. LEXIS 8388 (S.D.N.Y. June 23, 1994) ..................... 16

*Eder v. City of Burleson*,
No. 3:23-CV-00948-K, 2024 U.S. Dist. LEXIS 205881, 2024 WL 4771408
(N.D. Tex. Nov. 13, 2024) ................................................................ 5, 8, 17

*English v. Perdue*,
777 F. App'x 94 (5th Cir. 2019).............................................................13, 15

*Foster v. Solvay Pharms., Inc.*,
160 Fed. App'x 385 (5th Cir. 2005) ............................................................ 14

*Frith v. Guardian Life Ins. Co.*,
9 F. Supp. 2d 734 (S.D. Tex. 1998) .............................................................3

*Gartin v. Par Pharm. Cos.*,
289 Fed. App'x 688 (5th Cir. 2008) .............................................................3

*Grizzard v. One TPA Sys., Inc.*,
   No. SA-23-CV-1487-FB, 2024 U.S. Dist. LEXIS 180406 (W.D. Tex. Sep. 30,
   2024) ....................................................................................................5

*Guerrero v. Total Renal Care, Inc.*,
   No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, 2012 WL 899228
   (W.D. Tex. Mar. 12, 2012) ................................................................... 8, 9

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
   995 F. Supp. 2d 587 (N.D. Tex. 2014) .........................................................2

*United States ex rel. King v. Solvay Pharm., Inc.*,
   871 F.3d 318 (5th Cir. 2017) ................................................................ 13

*Life Partners Creditors' Tr. v. Cowley*,
   926 F.3d 103 (5th Cir. 2019) ................................................................ 17

*United States ex rel. Ligai v. ETS-Lindgren Inc.*,
   No. H-11-2973, 2014 U.S. Dist. LEXIS 129164, 2014 WL 4649885 (S.D.
   Tex. Sep. 16, 2014) .............................................................................. 15

*Marlbrough v. Cornerstone Chem. Co.*,
   No. 23-22, 2024 U.S. Dist. LEXIS 44957, 2024 WL 1116177 (E.D. La. Mar.
   14, 2024) ............................................................................................ 10

*Musser v. Paul Quinn Coll.*,
   944 F.3d 557 (5th Cir. 2019) ................................................................ 10

*Newbury v. City of Windcrest*,
   991 F.3d 672 (5th Cir. 2021) ............................................................13, 14

*Patterson v. Heffernan*,
   No. 21-5398, 2024 U.S. Dist. LEXIS 104210, 2024 WL 2958949 (E.D. Pa.
   June 12, 2024) ..................................................................................... 16

*United States ex rel. Patton v. Shaw Servs., L.L.C.*,
   418 F. App'x 366 (5th Cir. 2011)..............................................................6

*Perret v. Nationwide Mut. Ins. Co.*,
   770 F.3d 336 (5th Cir. 2014) ................................................................ 12

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ...................................................................3

*Robertson v. Bell Helicopter Textron*,
   32 F.3d 948 (5th Cir. 1994) ................................................................. 5, 8

*Sacks v. Tex. S. Univ.*,
    83 F.4th 340 (5th Cir. 2023) ................................................................. 11

*Sealed Appellant I v. Sealed Appellee I*,
    156 F. App'x 630 (5th Cir. 2005) ............................................................9

*Spencer v. Shell Expl. & Prod. Co.*,
    No. 24-20173, 2025 U.S. App. LEXIS 6429, 2025 WL 855314 (5th Cir. Mar.
    19, 2025) ................................................................................................ 11

*United States ex rel. Steury v. Cardinal Health Inc.*,
    735 F.3d 202 (5th Cir. 2013) ....................................................................7

*Strong v. Univ. Healthcare Sys., L.L.C.*,
    482 F.3d 802 (5th Cir. 2007) ................................................................. 13

*Sutton Place 1 Townhouse v. Amguard Ins. Co.*,
    668 F. Supp. 3d 684 (W.D. Tex. 2023) .....................................................4

*Thomas v. New Leaders for New Sch.*,
    278 F.R.D. 347 (5th Cir. 2011) .................................................................4

*Thompson v. Microsoft Corp.*,
    2 F.4th 460 (5th Cir. 2021) ..................................................................... 13

*United States ex rel. Uhlig v. Fluor Corp.*,
    839 F.3d 628 (7th Cir. 2016) ....................................................................8

*United States v. HPC Healthcare, Inc.*,
    723 F. App'x 783 (11th Cir. 2018) ......................................................... 15

*United States v. Raytheon Co.*,
    93 F.4th 776 (5th Cir. 2024) ................................................................... 10

*Washpon v. Progressive Corp.*,
    No. 1:23-CV-1239-RP, 2024 U.S. Dist. LEXIS 14571, 2024 WL 874721
    (W.D. Tex. Jan. 26, 2024) ....................................................................... 16

*Wells v. Ali*,
    304 Fed. App'x 292 (5th Cir. 2008) ....................................................... 16

**Statutes**

31 U.S.C. § 3730(h) ................................................................................*passim*

42 U.S.C. § 1320a-7b....................................................................................6

42 U.S.C. § 1395w-23 ...................................................................................7

**Other Authorities**

42 C.F.R. § 422.300 *et seq.* ....................................................................................7

Fed. R. Civ. P. 1 .................................................................................................. 17

Fed. R. Civ. P. 4(a)(1) ..................................................................................... 2, 16

Fed. R. Civ. P. 9(b) ...............................................................................................8

Fed. R. Civ. P. 12(b) .....................................................................................*passim*

Fed. R. Civ. P. 15(a) ............................................................................................ 17

## I.    INTRODUCTION

Plaintiffs Cynthia Valdez and Gabriel Hack sue their former employer, WellMed Medical Management, Inc. ("WellMed"), under the False Claims Act's ("FCA") retaliation provision.  Plaintiffs allege certain WellMed employees accepted "kickbacks" in exchange for preferring vendors for construction and maintenance contracts paid for by WellMed. But Plaintiffs allege no plausible nexus between these alleged kickbacks and the submission by WellMed of a single false claim to the government or that such kickbacks caused WellMed to receive even one cent from the public fisc.  Nor does the Complaint allege retaliatory acts against Plaintiffs by WellMed.  Plaintiffs failed to effect proper service of this lawsuit on WellMed, to boot.

WellMed moves for dismissal of Plaintiffs' claims under Rules 12(b)(6), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure because Plaintiffs fail to allege facts establishing a plausible retaliation claim under the FCA and because service of process is a prerequisite for personal jurisdiction.

## II.    BACKGROUND

Plaintiffs allege they each suffered retaliation for reporting suspected improper use of federal funds, Compl. ¶ 1, and that Defendants WellMed and UnitedHealth Group, Inc. ("United") engaged in healthcare fraud "through an elaborate scheme involving kickbacks, fraudulent billing practices, and bid manipulation."  Compl. ¶ 2.  Plaintiffs allege a scheme where certain WellMed employees received gifts and gratuities from a contractor doing work for WellMed, in exchange for which the contractor received work and preferential treatment.  *See* Compl. ¶¶ 41-45, 94-104.  Despite making these sweeping and potentially stigmatizing fraud allegations, Plaintiffs do not allege facts about the submission of claims

Defendant WellMed Medical Management, Inc.'s Motion to Dismiss                    Page 1

for payment to the government by WellMed, much less any facts about how such claims were false. *See generally* Compl.  The Complaint instead alleges that United, not WellMed, receives capitated payments for enrollees in Medicare Advantage plans. *See* Compl. ¶ 28-32.

Plaintiffs now sue WellMed and United under the FCA. *See* Compl.  On April 22, 2025, the clerk issued a summons for WellMed. *See* ECF No. 3.  This summons bears the court's seal and the clerk's signature. *Id.*  On May 14, 2025, Plaintiffs filed a different summons directed to WellMed purporting to prove service in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See* ECF No. 4.  The summons Plaintiffs filed, however, does not bear the court's seal nor the clerk's signature. *Id.*

This motion follows.

## III.   DISMISSAL STANDARDS

### A.   Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs.*

*L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery." (cleaned up)).  Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998).

Although well-pleaded facts are taken as true and reasonable inferences are in favor of the nonmoving party, *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019), complaints still must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," have no right to the presumption of truth.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (providing that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

**B.      Insufficiency of Process and Service of Process**

Federal Rule of Civil Procedure 12(b)(4) allows dismissal of a claim for "insufficient process."  "Generally speaking, an objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service." *Gartin v. Par Pharm. Cos.*, 289 Fed. App'x 688, 691 n. 3 (5th Cir. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353) (cleaned up).  A motion to dismiss under Rule 12(b)(4) "thus challenges whether the summons . . . is invalid under the applicable

Rules of Civil Procedure." *Sutton Place 1 Townhouse v. Amguard Ins. Co.*, 668 F. Supp. 3d 684, 693 (W.D. Tex. 2023).

Federal Rule of Civil Procedure 12(b)(5) allows dismissal of a claim for "insufficient service of process" if the summons and complaint were "not properly served in the appropriate manner." *Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 350-51 (5th Cir. 2011). "In the absence of valid service of process, proceedings against a party are void." *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RETALIATION UNDER THE FALSE CLAIMS ACT

Plaintiffs' Complaint fails to state a claim for relief under the FCA's retaliation provision for three reasons: (1) the Complaint inadequately pleads that Plaintiffs engaged in activities protected by 31 U.S.C. § 3730(h); (2) the Complaint lacks well-pleaded allegations of adverse employment actions; and (3) the Complaint fails to plausibly plead that alleged retaliation was caused by protected activities.

To plead a claim of retaliation under the FCA's anti-retaliation provisions, 31 U.S.C. § 3730(h) ("Section 3730(h)"), a complaint must contain sufficient well-pleaded facts, plausible on their face: (1) that the employees engaged in an activity protected under the FCA; (2) the employer knew that the employees engaged in the protected activity; and (3)the employer discriminated against the employees because they engaged in the protected activity. *See United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 326 (5th Cir. 2016). Plaintiffs fail to plausibly allege they engaged in protected activity, suffered adverse employment actions, and that any purported adverse employment action

was caused by the protected activity.  Because Plaintiffs cannot cure these deficiencies, the Court should dismiss the Complaint with prejudice.

### A.    Plaintiffs Did Not and Cannot Adequately Plead They Engaged in Protected Activity under 31 U.S.C. § 3730(h)

Plaintiffs' entire Complaint is premised on alleged actions by WellMed that could not reasonably lead to a viable False Claims Act violation.  Plaintiffs allege no protected internal complaints of the sort required by the Fifth Circuit.  For either reason, this Motion should be granted.

1.    Plaintiffs inadequately plead conduct that could plausibly lead to a viable claim under the False Claims Act.

A viable 3730(h) claim must plausibly allege that the employee's actions were "aimed at matters that reasonably could lead to a viable claim under the [False Claims] Act." *Bos. Sci. Corp.*, 864 F. Supp. 2d at 605.  To do so, Plaintiffs must plead they engaged in protected activity that "relate to matters demonstrating a 'distinct possibility' of False Claims Act litigation." *Eder v. City of Burleson*, No. 3:23-CV-00948-K, 2024 U.S. Dist. LEXIS 205881, 2024 WL 4771408, at *6 (N.D. Tex. Nov. 13, 2024).  A "distinct possibility" of FCA litigation requires the employee to plead a "good faith belief" and that "a reasonable employee in same or similar circumstances might believe that the employer is committing fraud against the government." *Id.* (cleaned up).  "Stated another way, Plaintiff will only be protected from wrongful termination or retaliation under the FCA, if her complaints in some way relate to [defendant's] submission of false or fraudulent claims to the government for payment or approval." *Grizzard v. One TPA Sys., Inc.*, No. SA-23-CV-1487-FB, 2024 U.S. Dist. LEXIS 180406, at *47, *55 (W.D. Tex. Sep. 30, 2024); *see also Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994) (holding that raising concerns of

the employer's conduct to a supervisor is only a protected activity if the conduct relates to the presentation of false claims to the government).

Plaintiffs, try as they might, cannot shoehorn their allegations of kickbacks and gratuities between an owner and a general contractor into an FCA violation.  The Complaint lacks any well-pleaded allegation that Defendants submitted claims for payment to the government.  *See United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 372 (5th Cir. 2011) (explaining that, for FCA retaliation claims, the protected activity must "concern false or fraudulent claims for payment submitted to the government").  The Complaint alleges that a different entity—United—receives a per member per month capitation payment for operating a Medicare Advantage plan (Compl. ¶ 28), that these capitation payments "contribute to [Defendants'] overall revenue" (Compl ¶ 30), and that "[f]rom the revenue generated," Defendants spend some portion on "construction and facility development."  Compl. ¶ 30.  Plaintiffs baldly allege "Medicare has specific parameters and provisions for capital related costs," but do not allege that Defendants violated any "parameters" or "provisions."  Compl. ¶ 31.[1]  Plaintiffs do not allege this results in the submission of a false claim to the federal government—and it does not.

Specifically, Plaintiffs incorrectly suggest that Medicare Advantage capitation

---

[1] Similarly, Plaintiffs state it is "illegal to knowingly and willfully offer, pay, solicit or receive remuneration to induce referrals of items or services covered by" federal health programs.  Compl. ¶ 32.  This is perhaps a reference to the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, but Plaintiffs do not assert a violation or any facts to support a violation.  Plaintiffs could not make such an allegation, as overhead costs that are the subject of the Complaint are not "item[s] or service[s] for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a-7b(b)(1)(A).

payments are based on Medicare Advantage Organization overhead costs.  Rather, Medicare Advantage Organizations place bids against federal benchmarks determined by the federal government's average spend per beneficiary under traditional fee-for-service Medicare.  *See* 42 U.S.C. § 1395w-23; 42 C.F.R. § 422.300 *et seq.*  Under this regime, inefficiencies leading to higher overhead costs do **not** result in higher costs to the government; instead, they reduce the profit margin for the Medicare Advantage Organization.  *See* 42 U.S.C. § 1395w-23; 42 C.F.R. § 422.300 *et seq.*

Here, Plaintiffs do not (and cannot) allege these expenses are passed on to the government.  Plaintiffs allege no misrepresentations to the government about these expenses to induce payment.  Merely deriving revenue from the federal government does not extend FCA liability to every business decision by a federal contractor, such as which vendors to hire.  *See, e.g., United States ex rel. Steury v. Cardinal Health Inc.*, 735 F.3d 202, 205-07 (5th Cir. 2013) (explaining that the FCA "is not a general enforcement device for federal statutes, regulations, and contract") (internal citations and quotation marks omitted).  Even if Defendants bore additional costs due to the alleged kickback scheme, those costs were not passed on to the government given the mechanics of the Medicare Advantage regime.  As there can be no "distinct possibility" of FCA litigation where there is no false claim to the government, the Plaintiffs' deficiencies cannot be cured, and the Complaint should be dismissed with prejudice.

Furthermore, Plaintiffs allege no kind of FCA violation.  Plaintiffs make no allegations that they had reason to think that the purported kickback scheme resulted in

any claim for payment to the federal government.[2]  Even if Plaintiffs subjectively and in good faith believed that the alleged kickback scheme increased costs to the federal government—which the Complaint does not plausibly allege, Plaintiffs plead no facts to suggest that they had an objectively reasonable basis for that belief.  In the absence of a reasonable, objective basis for their beliefs, there could be no "distinct possibility" of FCA litigation sufficient to sustain Plaintiffs' claims.  *Eder*, 2024 U.S. Dist. LEXIS 205881, at *6; *see also United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016) (affirming dismissal of Section 3730(h) claim for failing to allege objectively reasonable basis for believing employer was committing fraud against the government).  This is cause enough to dismiss the Complaint.

> 2.      Plaintiffs inadequately plead that they made protected internal reports of FCA violations.

To qualify as a protected activity under Section 3730(h), "an employee's internal report must specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct."  *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, 2012 WL 899228, at *14 (W.D. Tex. Mar. 12, 2012).  "[T]he Fifth Circuit [has] stated that a plaintiff could not state a claim for retaliatory discharge without showing that he 'characterized his concerns as involving illegal, unlawful, or false-claims investigations.'"  *Id.* at *15-*16 (quoting *Sealed Appellant I v. Sealed Appellee I*, 156 F. App'x 630, 635 (5th Cir. 2005)); *accord Robertson v. Bell*

---

[2] Although not necessary for FCA retaliation claims, the degree to which Plaintiffs' allegations fall short of the heightened pleading standard for FCA violations under Federal Rule of Civil Procedure 9(b) is telling of the substantive inadequacy of Plaintiffs' allegations of protected activity.

*Helicopter Textron*, 32 F.3d 948, 952 (9th Cir. 1994) (finding no protected activity when plaintiff "never used the terms 'illegal,' 'unlawful,' or 'qui tam action' in characterizing his concerns about" defendant's conduct).

Plaintiffs refer only to their internal complaints through conclusory allegations, and do not allege that they specifically reported "allege[d] fraudulent claims for federal funds" or "characterized [their] concerns as involving illegal, unlawful, or false-claims investigations." *Guerrero*, 2012 U.S. Dist. LEXIS 32615, at \*14-\*16. Although the Complaint describes Defendants' **conduct** as "illegal, fraudulent, and unlawful use of federal funds," Compl. ¶ 67, or as relating to "illegality, Medicare fraud, unlawful conduct, and fraudulent use of federal funds," Compl. ¶ 74, Plaintiffs do not allege they characterized *their internal complaints* in those terms. The Complaint does not even identify when the complaints allegedly occurred, whether they were conveyed orally or in writing, or in what context they were raised, let alone what complaints Plaintiffs specifically made. The allegations fall short of Plaintiffs' burden of including well-pleaded facts that they "characterized [their] concerns as involving illegal, unlawful, or false-claims investigations" as required by the Fifth Circuit. *Sealed Appellant I*, 156 Fed. App'x at 635. This failure alone warrants dismissal.

**B.    Plaintiffs Inadequately Plead That Plaintiff Hack Suffered Any Adverse Employment Action**

Turning first to Plaintiff Hack, the Complaint alleges four adverse employment actions: (1) bullying and harassment, Compl. ¶¶ 56, 81, 107; (2) failure to promote, Compl. ¶¶ 57, 59-65; (3) lower performance reviews, Compl. ¶¶ 78-80; and (4) constructive discharge, Compl. ¶¶ 81-82. Each lack well-pleaded facts.

First, the allegations of bullying and harassment of Plaintiff Hack lacks any information as to what manner of bullying and harassment allegedly occurred: how often, by whom, or even in what way.  In similar contexts,[3] courts have found that "[h]arassment affects a 'term, condition, or privilege' of employment when it is so severe and pervasive that it alters the conditions of employment and 'create[s] an abusive working environment.'"  *Marlbrough v. Cornerstone Chem. Co.*, No. 23-22, 2024 U.S. Dist. LEXIS 44957, 2024 WL 1116177, at *13 (E.D. La. Mar. 14, 2024) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  The Complaint does not allege the necessary facts to support a finding that Plaintiff Hack suffered harassment of the severity and pervasiveness to support a retaliation claim, and generic references are not enough.  While the Complaint alleges that "a campaign of harassment and bullying ensued," Compl. ¶ 56, and that Plaintiff Hack was "bullied" and "harassed," Compl. ¶¶ 81, 107, there is no more detail than that.  These allegations are conclusory and boilerplate, not well-pleaded facts sufficient to sustain a claim of retaliation.  *See id.* (dismissing hostile work environment claim based on "conclusory statement[s]" and "boilerplate allegations").

Second, the Complaint fails to plead the facts necessary to state a claim for retaliatory failure to promote.  In a similar context, this District Court has recently found

---

[3] The Fifth Circuit has analyzed Section 3730(h) claims similarly to claims under other anti-retaliation statutes.  *See, e.g., Bias*, 816 F.3d at 326-37 (analyzing what is a "retaliatory act" through reference to Title VII); *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 562 n. 1 (5th Cir. 2019) (applying Title VII and Age Discrimination in Employment Act cases to analyze but-for causation standard for Section 3730(h) claims); *United States v. Raytheon Co.*, 93 F.4th 776, 790 (5th Cir. 2024) (applying Title VII rulings to analyze what is a "materially adverse action").

that failure-to-promote claims must allege "specific facts in support of [their] qualifications for the role, as well as whether [they] applied for the role." *Barrera v. Austin Indep. Sch. Dist.*, No. 1:24-cv-490-DAE, 2025 U.S. Dist. LEXIS 34589, at *8 (W.D. Tex. Feb. 25, 2025). The Complaint's allegations fail to meet this threshold. There is not even an allegation that Plaintiff Hack applied for the open position(s). *See* Compl. ¶¶ 59-65. Nor an allegation of (i) what qualifications were necessary for the role, or (ii) facts to support Plaintiff Hack was qualified for the role. Instead, the Complaint merely alleges that Plaintiff Hack had "greater education qualifications" than the selected candidate. Compl. ¶ 61. That is not enough.

Third, the allegations that Plaintiff Hack received lower performance reviews fall short. *See* Compl. ¶ 79. The Complaint alleging unfavorable performance reviews as an adverse employment action must allege the actions were "pretextual or unjustified" in a non-conclusory way. *See Spencer v. Shell Expl. & Prod. Co.*, No. 24-20173, 2025 U.S. App. LEXIS 6429, 2025 WL 855314, at *7 (5th Cir. Mar. 19, 2025) (affirming district court's dismissal of retaliation and discrimination claims). The Complaint fails to do so here. The only allegation is that Plaintiff Hack received "4s and 5s" every year except for her final year, where "she received 2s and 3s." Compl. ¶¶ 78-79. There is no allegation the decline in ratings was due to anything other than performance-based reasons and this does not plead an adverse employment action.

Fourth, the Complaint does not adequately allege Plaintiff Hack was "constructively discharged." Compl. ¶¶ 81-82. To plead constructive discharge, plaintiffs must allege they "were discriminated against to the point where a reasonable person would have felt compelled to resign." *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 345 (5th Cir. 2023). The

reasonableness test weighs six factors in determining if there has been a constructive discharge: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *See Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014) (internal citation omitted). Plaintiffs do not allege any of the six factors. *See* Compl.¶¶ 1-9, 20-118. Bald and generic contentions that Plaintiff Hack was "passed over for jobs, harassed, bullied, and threatened, fearing for her safety, sanity and health," Compl. ¶ 81, are insufficient. *See Perret*, 770 F.3d at 338.

The Complaint lacks well-pleaded facts to plausibly plead Plaintiff Hack was subjected to any of the four alleged adverse employment actions under Fifth Circuit case law. As a result, all retaliation claims as to Plaintiff Hack should be dismissed.

### C. Plaintiffs Inadequately Plead Plaintiff Valdez Was Subjected to Retaliatory Harassment, Failure to Promote, or Reassignment

Plaintiffs' allegations that Plaintiff Valdez was subjected to retaliatory, adverse employment actions through harassment and a failure to promote suffer from the same flaws as the allegations of retaliation against Plaintiff Hack. *See supra* IV.B. The additional allegation that Plaintiff Valdez was reassigned as retaliation is also inadequately pleaded. Compl. ¶¶ 83-85. There are no well-pleaded facts from which to infer reassignment was an adverse employment action. Retaliatory acts must be "materially adverse, which . . . means it well might have dissuaded a reasonable worker from engaging in protected activity." *Bias*, 816 F.3d at 326. Plaintiffs allege that Plaintiff Valdez "was placed in a slow

market" and no more.  Compl. ¶ 83.  Although reassignment or transfer can be an adverse employment action "where the new position proves objectively worse," Plaintiffs offcer no such allegations.  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021).  Absent more, the reassignment allegation is not an adverse employment action.  The Complaint lacks any well-pleaded facts that Plaintiff Valdez was suffered retaliatory harassment, failure to promote, or re-assignment.

**D.      There Are No Well-Pleaded Facts from Which to Infer Plaintiffs' Purported Protected Activity Caused Adverse Employment Actions**

"The FCA prohibits adverse employment action taken 'because of' protected activity relating to an FCA suit."  *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017) (quoting 31 U.S.C. § 3730(h)(1)).  Plaintiffs must allege their protected activity was "the but-for cause of their terminations."  *Id.*  Although temporal proximity between protected activity and adverse employment action can support an inference of but-for causation, that is only where "temporal proximity alone" is typically not enough.  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (affirming dismissal of retaliation claim for lack of but-for causation).  The "protected activity and the adverse action must have very close temporal proximity" to raise plausible causation, and "a five-month lapse is not close enough."  *Newbury v. City of Windcrest*, 991 F.3d 672, 679 (5th Cir. 2021) (cleaned up).  Without temporal proximity, Plaintiffs must include "other allegations that might [make] up for the deficiency."  *English v. Perdue*, 777 F. App'x 94, 98-99 (5th Cir. 2019) (affirming dismissal of retaliation claim for inadequate allegations of but-for causation).

Plaintiffs do not even attempt to allege temporal proximity, failing to allege when they purportedly engaged in protected activities or when most of the alleged adverse actions occurred.  For example, although Plaintiffs allege that they reported concerns, Compl. ¶¶ 67, 74, 105, 106, they make no allegations of when they made those reports. Similarly, Plaintiffs include conclusory allegations they were subject to harassment and bullying, Compl. ¶¶ 56, 107, but they provide no timeline other than to say it occurred "[a]fter both Plaintiff's [sic] complained."  Compl. ¶ 56.

To the contrary, what little timeline the Complaint has weighs against an inference of causation.  At least one of Plaintiffs' allegations of adverse actions suggests the retaliation began before any reports of purported fraud.  Compl. ¶ 60 ("This became a pattern that there were promotions completed in violation of WellMed's policies and procedures over Plaintiffs, **particularly** after they complained.") (emphasis added).  As another example, the Complaint alleges Hack was "constructively discharged" on June 19, 2023, Compl. ¶ 82, but also that the purported protected activity occurred sometime before mid-2022.  Plaintiff Hack's "constructive discharge" occurred at least ten to eleven months **after** the purported protected activity, well beyond when the Fifth Circuit considers temporal proximity to support an inference of causation.  *Newbury*, 991 F.3d at 679 (concluding that "a five-month lapse is not close enough" to rely on temporal proximity); *see also Foster v. Solvay Pharms., Inc.*, 160 Fed. App'x 385, 389 (5th Cir. 2005) (explaining that a six month gap between protected activity "is too great to establish

retaliation based merely on temporal proximity").[4]  And the Complaint alleges Plaintiff Valdez suffered a suite of adverse employment actions after complaining but also that "[a]s soon as Mr. Valdez complained . . . Mr. Valdez got terminated."  Compl. ¶ 85.  Plaintiff Valdez obviously could not have been subject to sustained bullying and harassment, be passed over for promotions, or reassigned if he was terminated "as soon as [he] complained."  *Id.*

The Complaint is devoid of "other allegations that [might] make up for the deficiency" created by the lack of temporal proximity.  *English*, 777 F. App'x at 98-99. Plaintiffs merely allege that adverse employment actions occurred some unspecified time "after" their reports.  Compl. ¶¶ 56, 78, 79, 83.  The Complaint lacks any other indicia to support causation.  That is not enough to state a claim for retaliation under Section 3730(h).[5]

Plaintiffs' allegations are "merely consistent" with a defendant's liability, but "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 557).  The Complaint does not plausibly

---

[4] The Complaint does not allege when Plaintiff Valdez was terminated.  If required to proceed, however, WellMed is confident the record will show that Plaintiff Valdez's purportedly retaliatory termination was even more attenuated.

[5] *See also United States v. HPC Healthcare, Inc.*, 723 F. App'x 783, 792 (11th Cir. 2018) (affirming dismissal and explaining that the plaintiff "failed to plead a causal link between [a purported protected activity] and any of the actions she alleged constituted retaliation"); *United States ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-11-2973, 2014 U.S. Dist. LEXIS 129164, 2014 WL 4649885, at *52 (S.D. Tex. Sep. 16, 2014) (affirming dismissal and explaining that a significant gap of time between purported protected activity and alleged adverse employment action "weighs heavily against" retaliation).

allege protected activity was the cause of any retaliatory conduct and therefore should be dismissed for that reason alone.

## V.   PLAINTIFFS' SERVICE OF A DEFECTIVE SUMMONS WARRANTS DISMISSAL

When a plaintiff elects to effect service of summons rather than seek a waiver, as Plaintiffs have done here, the summons to be served must "be signed by the clerk" and "bear the court's seal." Fed. R. Civ. P. 4(a)(1)(F), (G). Plaintiffs did not effect service of a summons that conforms to the Federal Rules: the summons served on WellMed through its registered agent lacked both the clerk's signature and the court's seal. *See* ECF No. 4.

A summons that lacks the clerk's signature is invalid, and omission of the clerk's signature renders service improper. *See Washpon v. Progressive Corp.*, No. 1:23-CV-1239-RP, 2024 U.S. Dist. LEXIS 14571, 2024 WL 874721, at *6 (W.D. Tex. Jan. 26, 2024); *see also Wells v. Ali*, 304 Fed. App'x 292, 295 (5th Cir. 2008) (concluding that a district court "had no choice" but to dismiss claims where a plaintiff failed to obtain clerk signature and court seal). "The consequence of service of an unsigned and unsealed summons is dismissal." *Patterson v. Heffernan*, No. 21-5398, 2024 U.S. Dist. LEXIS 104210, 2024 WL 2958949, at *5 (E.D. Pa. June 12, 2024) (citing *Ayers v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 570 (3d Cir. 1996)). "[S]ervice of an unsigned and unsealed summons is generally thought to demonstrate a flagrant disregard for the rules and, thus, to provide a basis for denying leave to amend." *Crossen v. Bernstein*, 91 Civ. 3501 (PKL), 1994 U.S. Dist. LEXIS 8388, at *8 (S.D.N.Y. June 23, 1994).

Dismissal is warranted under both Rule 12(b)(4) and 12(b)(5), as both the summons itself was deficient under the Rules, and, by serving a defective summons, Plaintiffs failed to effect adequate service of process. Fed. R. Civ. P. 12(b)(4), (b)(5). Not only does this

prejudice WellMed, which has an interest in ensuring the rules are followed when it is being subject to the potential stigma of the salacious and inadequately pleaded allegations of this lawsuit, but it also harms the legal system as a whole by impairing the Court's ability to effectuate the "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  As a result, Plaintiffs have not effected service of summons, which is required for a federal court to exercise jurisdiction over the defendants, the proceedings are void, and the Complaint should be dismissed.

## VI.     DISMISSAL WITH PREJUDICE IS APPROPRIATE

Although Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely given" when "justice so requires," "[l]eave to amend need not be granted when the amended pleading 'would not withstand a motion to dismiss for failure to state a claim.'"  *Life Partners Creditors' Tr. v. Cowley*, 926 F.3d 103, 125 (5th Cir. 2019) (quoting *Lewis v. Fresne*, 252 F.3d 352, 360 n.7 (5th Cir. 2001)).  Dismissal with prejudice is warranted here, as any amended complaint Plaintiffs could propose would similarly fail. Because Section 3730(h) requires Plaintiffs to plead an employee's protected activities "relate to matters demonstrating a 'distinct possibility' of False Claims Act litigation," *Eder*, 2024 U.S. Dist. LEXIS 205881, at *6, and the submission of false or fraudulent claims to the federal government, *id.*, any proposed amended complaint by Plaintiffs is doomed to fail: given the mechanics of Medicare Advantage, there simply is no scenario by which Plaintiffs can plead Defendants submitted claims to the federal government related to the activities alleged.  Without the ability to allege Defendants submitted false claims for payment to the federal government, Plaintiffs cannot sustain a retaliation claim under the False Claims Act.  Therefore, dismissal with prejudice is warranted.

## VII.     CONCLUSION

Plaintiffs inadequately plead retaliation under Section 3730(h), warranting dismissal.  Plaintiffs' insufficient process and deficient service of process also warrant dismissal.  This Court should grant WellMed's motion and dismiss the Complaint with prejudice.


Dated: June 16, 2025                                    Respectfully submitted,

*/s/Alex P. Hontos*
_____

Alex P. Hontos*
Minnesota State Bar No. 0388355
hontos.alex@dorsey.com
Christopher A. DeLong*
Minnesota State Bar No. 0398965
delong.christopher@dorsey.com
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)

*admitted pro hac vice*

*Attorneys for Defendants WellMed Medical Management, Inc. and UnitedHealth Group, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 16, 2025, a true and correct copy of the

foregoing instrument was served on all counsel of record via CM/ECF.

*/s/Alex P. Hontos*
Alex P. Hontos
