IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GABRIEL VALDEZ AND CYNTHIA HACK, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO 5:25-CV-00438 |
| WELLMED MEDICAL MANAGEMENT, INC. AND UNITEDHEALTH GROUP, INC. | § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(b) MOTIONS TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiffs GABRIEL VALDEZ ("Mr. Valdez") and CYNTHIA HACK ("Mrs. Hack")(collectively, hereinafter "Plaintiffs") in the above-entitled and numbered cause and file this *Plaintiffs' Response to Defendants' 12(b) Motions to Dismiss*, and for cause of action would respectfully show the Court and Jury the following:

## I.    INTRODUCTION

1. Plaintiffs Gabriel Valdez and Cynthia Hack have alleged in detail that they engaged in protected whistleblower activity under the False Claims Act ("FCA") –reporting what they reasonably believed was fraud and misuse of federal Medicare funds – and suffered retaliation as a result.

2. Defendant WellMed Medical Management, Inc. ("WellMed") and Defendant UnitedHealth Group, INC. ("UHG") seek to dismiss this FCA retaliation case on grounds that ignore the

well-pleaded allegations. In doing so, Defendants attempt to apply inapplicable FRCP 9(b) heightened standards of pleadings and even the summary judgment standard at the 12(b) phase.

3. The United States Court of Appeals for the Fifth Circuit has held that claims brought under the False Claims Act are subject to Fed. R. Civ. P. 9(b)'s pleading standard; however, these cases **did not** involve retaliation claims. Defendants acknowledge there is not a heightened standard for retaliation claim, as the Fifth Circuit has not explicitly held that Rule 9(b) applies to retaliation claims made pursuant to 31 U.S.C.S. § 3730(h). *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at *7 (W.D. Tex. Mar. 12, 2012). Instead, claims under 31 U.S.C.S. § 3730(h), at their core, address retaliation issues and not fraud, and Fed. R. Civ. P. 8 should govern. *Id*. at *8.[1]

4. Defendants further failed to demonstrate that the Plaintiffs Original Complaint does not provide fair notice of Plaintiff's claims nor have Defendants demonstrated that the facts alleged do not show a plausible claim for relief as is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Doe v. Columbia-Brazoria ISD*, 855 F.3d 681, 685-86 (5th Cir. 2017). The Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. Accordingly, plaintiffs need not make out a prima facie

---

[1] [a]ll federal circuit courts of appeal that have faced this issue have reached the conclusion that 31 U.S.C. § 3730(h) claims need only 'meet the Rule 8(a) . . . standard.'" *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at *7-8 (W.D. Tex. Mar. 12, 2012). These courts of appeal reasoned that because retaliation claims under the FCA are not dependant on allegations of fraud, Rule 9(b)'s heightened standard should not be applied. *See Paige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 U.S. Dist. LEXIS 87421, at *5 (W.D. Tex. May 15, 2020); *See, e.g., United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010) (internal quotations omitted) ("Because her retaliation claim did not depend on allegations of fraud, Sanchez's complaint only needed [*8] a short and plain statement of the claim showing that [she was] entitled to relief."); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp*., 360 F.3d 220, 238 n.23 (1st Cir. 2004), abrogated on other grounds by A*llison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 128 S. Ct. 2123, 2130-31, 170 L. Ed. 2d 1030 (2008) ("A retaliation claim under 31 U.S.C. § 3730(h) does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)."); cf. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005) (stating FCA retaliation claims may still survive even if no false claims were ever actually submitted).

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **2** of **21**

case under "*McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." J*acquez v. Geo Int'l Mgmt.*, No. EP-20-CV-00183-KC, 2021 U.S. Dist. LEXIS 131535, at *27 (W.D. Tex. June 2, 2021) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) and quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

5. Defendants' motions alter the pleading requirements and asks the Court to impose a heightened burden on whistleblowers at the very outset. In essence, Defendants argue that because Plaintiffs have not (in its view) alleged an actual FCA violation with particularity, their retaliation claim must fail. But a plaintiff in an FCA retaliation case need not plead a successful fraud on the government – only that they took action to report such fraud. That is exactly what Plaintiffs have done here by reporting an illegal kickback scheme and fraudulent misuse of Medicare dollars within Defendants' operations. The FCA's whistleblower protection broadly covers efforts to stop fraud, even if fraud ultimately turns out to be unsuccessful or not provable in court. Defendants' arguments not only misstate the law, they ignore key factual allegations of the Complaint (such as Plaintiff Valdez's termination after raising concerns, and Plaintiff Hack's detailed descriptions of being harassed and threatened, Plaintiffs being denied promotions, Hack being given poor performance reviews, and Hack's constructive discharge). At minimum, any perceived gaps in detail can be cured by amendment.

6. The intent of an FCA retaliation protection is to protect employees while they are collecting information about possible fraud, even before they have all the puzzle pieces together. Even when an employee makes a report about an entity and that entity is innocent, the reporting employee is still protected from retaliation. No proof of the scheme itself is required at the

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **3** of **21**

pleading phase. *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at *16 (W.D. Tex. Mar. 12, 2012) quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005) (FCA retaliation claims may still survive even if no false claims were ever actually submitted).

7. Defendants further urge dismissal under Rules 12(b)(4) and 12(b)(5) due to a technical defect in the summons. Plaintiffs acknowledge that the summons served on Defendants lacked the Clerk's signature and seal.  As a result, Plaintiffs corrected the procedural issue (missing seal of court and clerk's signature) and re-served WellMed (Docket No. 15) on June 17, 2025 and UHG on June 23, 2025 (Docket No. 16).

8. Both Defendants were re-served with corrected summons well within 90 days.

9. Plaintiffs respectfully request that the Court permit this cure in the interest of justice and efficient resolution on the merits, especially since the 90-day service period under Rule 4(m) has not yet expired.

10. For these reasons and as elaborated below, the Court should deny Defendants' motions to dismiss. The Complaint adequately pleads each element of an FCA retaliation claim: protected activity, Defendants' knowledge, adverse employment actions, and a causal link between the same.  Plaintiffs respectfully ask the Court to allow this matter to proceed on the merits and deny Defendants' motions in their entirety.

## II. FACTUAL BACKGROUND

11. Plaintiffs are former employees of both Defendants who discovered and objected to what they perceived as a fraudulent scheme within the companies to defraud the government to their

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **4** of **21**

supervisors Compl. ¶¶ 129, 131). In brief, Plaintiffs observed that certain WellMed personnel were accepting kickbacks and gratuities from an outside contractor in exchange for steering lucrative construction and maintenance contracts to that contractor. These contracts were ultimately paid for using funds derived from Medicare (through capitated payments received by WellMed's corporate parent for Medicare Advantage plan enrollees). Compl. ¶¶ 30, 105, 106, 109, 111, 116.).

12. Plaintiff Cynthia Hack, a long-time high-performing employee, raised concerns internally about this "illegal, fraudulent, and unlawful use of federal funds" (Compl. ¶¶ 67) by reporting the suspected kickback scheme to her superiors in WellMed's management, to UHG's Management, and to the FBI. (Compl. ¶¶ 1–2, 67, 74, 76). She also complained that company policies were being violated in the awarding of contracts and in billing practices tied to Medicare funds.

13. Plaintiff Gabriel Valdez, likewise, internally reported to WellMed and to the Corporate UHG what he believed to be Medicare fraud and improper conduct. (Compl. ¶¶ 74). In response to these internal whistleblower reports, Defendants' attitude towards both Plaintiffs changed dramatically. After Plaintiffs complained, supervisors and agents subjected them to escalating retaliation. (Compl. ¶¶ 56, 133, and 134).

14. Ms. Hack – who had consistently received excellent performance reviews – suddenly saw her evaluations drop (from scores of "4"s and "5"s to "2"s and "3"s). She was passed over for promotions that she was qualified for, in favor of less experienced individuals. She endured a campaign of bullying and harassment, to the point where she was "fearing for her safety, sanity and health."(Compl. ¶¶ 78-81)

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **5** of **21**

15. Hack had no choice but to resign on June 19, 2023 – alleging constructive discharge caused by the intolerable work environment and stalled career. (Compl. ¶¶ 82, 134).

16. Mr. Valdez alleges that WellMed retaliated almost immediately: he was reassigned to an undesirable "slow market" (Compl. ¶¶ 83) (significantly hindering his sales opportunities) and terminated as soon as he complained about the fraudulent conduct. Compl. ¶¶ 85).

17. Plaintiffs filed this lawsuit on April 21, 2025 under the False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h), which protects employees from retaliation for their lawful efforts to stop fraud against the government. The Complaint names WellMed and its parent entity UHG and seeks relief for the retaliation Plaintiffs suffered.

18. On April 22, 2025, the Clerk issued a summons for WellMed (Docket No. 3). Plaintiffs served Defendants' registered agent with the Complaint. However, the copy of the summons they delivered was, inadvertently, not the Clerk-issued version and thus lacked the seal and signature (*see* Docket No. 4).

19. WellMed and UHG filed two motion's to dismiss on June 16, 2025, invoking Rule 12(b)(6) (failure to state a claim) and Rules 12(b)(4) & 12(b)(5) (insufficient process and service).

20. Plaintiff's have since corrected and served both Defendants, with the seal of court and the clerk's signature, first on WellMed on June 17, 2025 (Docket No. 15) and next on UHG on June 23, 2025 (Docket No. 16).

21. As demonstrated below, the Complaint contains sufficient factual matter, accepted as true, to state a plausible claim for relief.  Defendants' motions should be denied.

### III. STANDARD OF REVIEW

22. A Rule 12(b)(6) motion asks the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

23. A motion to dismiss under FRCP 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that – when accepted as true – are plausible and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

24. The motion to dismiss cannot be used to resolve factual disputes or the merits of the case, but instead it must demonstrate "… that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Watsky v. Williamson Cty.*, No. 1:21-cv-00374-RP, 2024 U.S. Dist. LEXIS 92368, at *5 (W.D. Tex. May 23, 2024)*Farrell v. Lease Supervisors, LLC*, No. MO:17-CV-00085-DC, 2017 U.S. Dist. LEXIS 226433, at *7 (W.D. Tex. Sep. 27, 2017) (*quoting Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

25. In evaluating motions to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The moving party bears the burden to show that no legally cognizable claim for relief exists. *Watsky* at *5.

## IV. ARGUMENTS AND AUTHORITIES

### A. The Complaint Adequately Pleads a Retaliation Claim Under the False Claims Act

26. A whistleblower who brings or takes steps in furtherance of bringing a *qui tam* lawsuit under the FCA retaliation standard is protected from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of an action under this section [the FCA.]" 31 U.S.C. § 3730(h). This subdivision of the FCA provides "a private cause of action for an individual retaliated against by his employer for assisting an FCA investigation or proceeding." *Graham*

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **7** of **21**

*Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 412, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005); s*ee also Paige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 U.S. Dist. LEXIS 87421, at \*6 (W.D. Tex. May 15, 2020)(whistleblower who takes steps in furtherance of *qui tam* lawsuit under FCA is protected from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . .").

27. To state a claim under the FCA's anti-retaliation provision, a plaintiff must plead facts showing that (1) they engaged in protected activity under the FCA; (2) the employer knew about that protected activity; and (3) the employer retaliated against them "because of" the protected activity. *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at \*10 (W.D. Tex. Mar. 12, 2012)(citing *United States ex rel. Patton v. Shaw Servs.*, *L.L.C.*, 418 F. App'x 366, 371-72 (5th Cir. 2011).

28. Defendants' motion challenges all three elements, but each challenge fails under the applicable pleading standards. Plaintiffs have alleged sufficient factual content to allow a reasonable inference that each element is met. Defendants motions must be denied.

### 1. *Plaintiffs engaged in protected activity by reporting conduct reasonably believed to be fraud on the government*

29. Protected activity under § 3730(h) includes not only acts "in furtherance of" an FCA lawsuit, but also "other efforts to stop 1 or more violations" of the FCA (31 U.S.C. § 3730(h)(1)).

30. "[E]xpress[ing] concerns about possible fraud to their employers," for example to a supervisor, is a step in furtherance of uncovering fraud, and thus protected under the FCA. P*aige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 U.S. Dist. LEXIS 87421, at \*7 (W.D. Tex. May 15, 2020) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994).

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **8** of **21**

31. An internal report "must specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct" to be protected.

32. However, employees are not required at the pleadings stage to even plead a "good faith belief" as long as they prove they reported the claims internally of the fraudulent Medicare-Medicaid. *See Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at *14 (W.D. Tex. Mar. 12, 2012)(former employee's FCA retaliation claim survived motion to dismiss where specifically alleged he reported fraudulent Medicare-Medicaid claims to a supervisor and employee was not required to plead a good faith belief of fraud). Indeed, § 3730(h) still protects an employee even if "the target of an investigation or action to be filed was innocent." *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, at *16 (W.D. Tex. Mar. 12, 2012)(quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005) (FCA retaliation claims may still survive even if no false claims were ever actually submitted).

33. Here, Plaintiffs easily satisfy this standard. Plaintiffs' allegations meet this requirement: they explicitly characterized the conduct as illegal and fraudulent vis-à-vis Medicare when complaining to their superiors, thereby putting WellMed on notice that they were trying to stop a perceived fraud on federal funds (*see* Compl. ¶¶ 67, 74, 105). This is exactly the sort of whistleblowing § 3730(h) protects.

34. The Complaint affirmatively alleges that Plaintiffs believed Defendants' conduct is illegal, fraudulent, and involved misuse of federal Medicare funds, and that they complained of this conduct internally and Hack further reported to the FBI (Compl. ¶¶ 1–2, 67, 74, 76). Plaintiff Hack reported what she viewed as "illegal, fraudulent, and unlawful use of federal funds" by

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **9** of **21**

WellMed – plainly invoking fraud on the government, to both Defendants and the Federal Bureau of Investigation. Likewise, Plaintiff Valdez internally raised concerns of "Medicare fraud" and other unlawful practices by WellMed and UHG to both Defendants. These are not vague or general grievances of general misconduct; they specifically connect Defendants' actions to fraud on a federal healthcare program, which is at the heart of what the FCA forbids.

35. Defendants argue that Plaintiffs' activities could not "reasonably lead to a viable FCA claim" because, in its view, the alleged kickback scheme did not result in any actual false claims being submitted to the government. Essentially, Defendants contend that no matter what Plaintiffs thought, there was "no scenario" in which the misconduct could involve fraud on Medicare due to the mechanics of capitated Medicare Advantage payments.  This is clearly not the standard required under law, and, at best, even if it was, it would be a fact dispute appropriate for analysis during a motion for summary judgment. Plaintiffs have alleged that Defendants' revenue (including Medicare payments) was used to fund the contractor payments in question. Defendants are aware that, even if the investigation finds them to be innocent of all claims, Plaintiff's are still protected as whistleblowers from retaliation. Any requirement that Plaintiffs prove what can be reasonably inferred from the evidence at this stage is improper for a 12(b) motion, and it therefore must be denied.   At best, whether or not Defendants ultimately can show that no "false claim" technically occurred is a merits defense or affirmative defense, not a pleading defect. Again, the FCA's retaliation provision protects the effort to stop fraud even if the fraud is not conclusively established.

36. Plaintiffs unquestionably related their concerns to fraud on the government by specifically invoking the misuse of Medicare funds.  The Complaint outlines how a contractor was rewarded through Defendants' expenditures of federal health dollars in apparent violation of

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC.,
AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **10** of **21**

law, which any reasonable employee might view as fraudulent. This is sufficiently pled, and again Defendants attempt to have the Court analyze whether a fact dispute exists under a summary judgment standard, which is inappropriate for a 12(b) motion.

37. Further, Defendants' narrow interpretation of FCA violations ignores several critical aspects of the alleged fraud scheme and the purpose of whistleblower protection under 31 U.S.C. § 3730(h).

   a. First, the FCA's anti-retaliation provision protects employees who report conduct they reasonably believe constitutes fraud against the government, regardless of whether the conduct ultimately results in a successful FCA claim. G*raham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005).

   b. Second, Defendants' argument that capitation payments insulate them from FCA liability oversimplifies the complex regulatory framework governing Medicare Advantage Organizations ("MAOs") and ignores multiple ways the alleged conduct could impact government payments.

   c. Defendants' argument that capitation payments immunize them from FCA liability would create a dangerous precedent that effectively eliminates whistleblower protection for employees of Medicare Advantage Organizations, contrary to Congress's intent in enacting broad FCA protections. Under Defendants' theory, Medicare Advantage Organizations could engage in virtually any fraudulent scheme—kickbacks, embezzlement, or misappropriation of federal funds—without FCA consequences, so long as they operate under capitation contracts. This interpretation is inconsistent with the FCA's remedial purpose.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **11** of **21**

38. Even if Defendants ultimately prevail on the merits regarding FCA liability, Plaintiffs' reports of the alleged kickback scheme were objectively reasonable given:

    a.   The obvious regulatory violations involved in kickback schemes;

    b.   The use of federal Medicare funds for the fraudulent construction contracts;

    c.   The systematic nature of the alleged bid-rigging and preferential treatment; and

    d.   The involvement of company executives in covering up the scheme.

39. Plaintiffs reported conduct that any reasonable employee would view as potentially fraudulent, which is sufficient for FCA whistleblower protection. At minimum, whether the kickback scheme could "reasonably" be seen as an FCA issue is a question of fact for the summary judgment phase that cannot be resolved against Plaintiffs at the pleading stage. The motion to dismiss invites the Court to weigh technical Medicare regulatory arguments about capitation payments and conclude that Plaintiffs were unreasonable in thinking something was amiss. That is improper on a Rule 12(b)(6) motion. Plaintiffs expressly allege they believed Defendants' conduct was unlawful and defrauding Medicare – and they were sufficiently concerned to report it through internal channels, satisfy the protected activity element as plead. In sum, Plaintiffs engaged in protected activity by internally reporting conduct that they believed was illegal and involved fraud on federal healthcare funds. This falls squarely within the FCA's shield for whistleblowers and is appropriately pled.

  **2.  *Defendants knew of Plaintiffs' protected activity through their reports***

40. To fulfill the second element of a prima facie retaliation claim under the FCA, plaintiff must "'show the employer had knowledge the employee engaged in protected activity.' *Robertson v. Bell Helicopter Textron,* 32 F.3d 948, 951 (5th Cir.1994). 'Such notice may be accomplished

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **12** of **21**

by an action that "put the employer on notice that litigation is a reasonable possibility," including internal complaints to supervisors. *Vaughn v. Harris Cty. Hosp. Dist.*, No. 4:17-CV-2749, 2021 U.S. Dist. LEXIS 188576 (S.D. Tex. Aug. 4, 2021) (quoting *United States ex rel. George v. Boston Scientific Corp.*, 864 F.Supp.2d 597 (S.D. Tex. 2012))."'

41. To determine whether a plaintiff has adequately pleaded her employer had "knowledge" of the alleged protected activity, courts consider "whether the employee characterized his or her complaints in terms of fraud or illegality." *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 U.S. Dist. LEXIS 32615, 2012 WL 899228 (W.D. Tex. Mar. 12, 2012) (citing *Robertson v. Bell Helicopter Textron*, 32 F.3d. 948, 951 (5th Cir. 1994) (holding employers lacked knowledge when "Robertson never characterized his concerns as involving illegal, unlawful, or false-claims investigations.")).

42. Plaintiffs have clearly met this standard in their complaint. The Complaint alleges facts supporting Defendants' knowledge of Plaintiffs' protected activity. Both Plaintiffs made their reports of suspected fraud to WellMed management personnel and UHG personnel– i.e., to the companies themselves itself (Compl. ¶¶ 67, 74, 105, 106). These reports were not anonymous or hidden; they were direct complaints by the employees to their superiors about illegal practices. Further, it is clear that Hack made a report to the FBI. Thus, Defendants (through their managerial agents) were fully aware that Plaintiffs had raised concerns about fraud and misuse of Medicare funds.

43. Defendants' motion suggests that Plaintiffs did not plead enough detail about "when, how, or to whom" they complained. It is true that the Complaint does not list the specific manager's name for each complaint – but it does state that each Plaintiff complained to the company about the fraud, and that afterwards they faced retaliation (Compl. ¶¶ 56, 67, 74, 83, 105–107). That

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **13** of **21**

is sufficient to imply knowledge at the pleading stage. Plaintiffs clearly used the required language, using terms like "illegal, fraudulent… use of federal funds" in their complaints, which no manager could mistake as anything other than a report of potential FCA-related misconduct. To the extent more specificity might be helpful (e.g., naming the individual supervisors informed), Plaintiffs can easily provide that in an amended pleading if so required. But even as filed, the Complaint permits the reasonable inference that Defendants' management knew exactly what Plaintiffs were alleging – serious internal accusations of Medicare fraud – and thus knew of their protected activity. There is no suggestion that Plaintiffs only complained to some unrelated third party or kept their concerns to themselves; the pleading explicitly says they "reported" or "complained" about the fraud internally (Compl. ¶¶ 1, 56, 67, 74). That suffices for notice.

44. Defendants' own motion acknowledges that Plaintiffs "allege that they reported concerns" (Docket No. 12 at ¶14), which would suffice for notice at the pleading stage. Accordingly, the second element – the employer's knowledge – is satisfied by Plaintiffs' allegations of direct internal reports of fraud.

### 3. Plaintiffs suffered actionable retaliation causally linked to complaint under § 3730(h).

45. The FCA's anti-retaliation provision is intended to broadly protect employees from any employer actions that would dissuade a reasonable person from reporting fraud. For FCA retaliation purposes, "the prima facie case's causation requirement [can] be satisfied by showing 'close timing between an employee's protected activity and an adverse action against him.'" *Jacquez v. Geo Int'l Mgmt.,* No. EP-20-CV-00183-KC, 2021 U.S. Dist. LEXIS 131535, at *26 (W.D. Tex. June 2, 2021) (citing *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 242

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **14** of **21**

(5th Cir. 2019) (quoting *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)). A period of two months is close enough to show a causal connection. *Id*. (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005). The Fifth Circuit has "suggested that four months is close enough," *Id*. (citing *Evans v. Cnty. of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). However, "[t]he Supreme Court has since approvingly cited a case that held three months was insufficient to show causation." *Id*. (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).  Here, Valdez has alleged he was almost immediately terminated as a result of his reports of fraud.

46. Causation may be established at the prima facie stage by temporal proximately alone if the protected act and the adverse employment action are very close in time. *United States ex rel. Young v. Kindred Healthcare, Inc.*, No. 1:18-cv-00806-RP, 2020 U.S. Dist. LEXIS 244372, at *11-12 (W.D. Tex. Dec. 30, 2020) (citing *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (finding six-and-a-half-week timeframe between protected activity and adverse employment action sufficient to satisfy causation requirement).

47. Here Plaintiff Valdez alleges that Defendants' fired him outright in retaliation for his complaint (Compl. ¶ 85: "As soon as Mr. Valdez complained… Mr. Valdez got terminated.").  This alone makes out a prima facie inference of causation. WellMed's own recitation underscores this: "Plaintiff Valdez obviously could not have been subject to sustained bullying… if he was terminated 'as soon as [he] complained.'" (Docket No. 12 at ¶ 15). While Defendant attempts to spin this as somehow undermining other aspects of Valdez's claim, it actually affirms the direct causal link – the termination was essentially instantaneous upon (and therefore because of) his protected complaint. No further proof of causation should be required for Mr. Valdez.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **15** of **21**

48. However, other facts can be considered besides temporal proximity for evaluation of retaliation and causation related to the same. Plaintiffs allege the following adverse actions suffered for their complaints:

a. *Constructive Discharge of Hack*:  Hack alleges that the retaliation made her working conditions so intolerable that she was constructively discharged, including a concerted effort by WellMed VP Casey Seirer to "take her down" along with Luis Casas of the Casas Group (Compl. ¶¶ 81–82; 115). Ms. Hack alleges she was repeatedly passed over for advancement, subjected to ongoing harassment and bullying, and even feared for her safety – treatment that any reasonable person might find unbearable, thus compelling resignation. The Complaint explicitly alleges just that (¶ 81, describing being "bullied and threatened, fearing for her safety, sanity and health," before she ultimately resigned).

b. *Harassment and Hostile Work Environment*: Both Plaintiffs describe being harassed and bullied by colleagues or supervisors after they spoke up (Compl. ¶¶ 56, 81, 107). Both Plaintiffs also generally allege they were subjected to a hostile attitude, isolation, and other mistreatment by management after their complaints (Compl. ¶¶ 56, 83, 107).

c. *Failure to Promote / Denial of Advancement*: Plaintiff Hack alleges that despite her qualifications and strong work history, she was denied promotions that she should have received, with those opportunities instead going to others less qualified (Compl. ¶¶ 57, 59–65). Being passed over for a promotion can constitute a material adverse action, particularly where it results in lost advancement and is done for retaliatory reasons. Hack's allegations are that she had better qualifications than the person who was promoted over her, implying she was more qualified.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **16** of **21**

d. *Unwarranted Negative Performance Reviews*: Plaintiff Hack also alleges that, for the first time in her tenure, she received significantly lower performance evaluation scores after she made her protected reports (Compl. ¶¶ 78–80). Specifically, after years of receiving top marks ("4s and 5s"), she was suddenly rated much lower ("2s and 3s") in the evaluation following her complaints.

e. *Undesirable Reassignment*: As to Plaintiff Valdez, the Complaint states that shortly after he voiced his concerns, he "was placed in a slow market" (Compl. ¶ 83) – in other words, reassigned to a territory or role with diminished opportunities. The Complaint's description is to a "slow market" meaning that Valdez was moved to a less favorable position (one with lower potential sales, commission and growth prospects).

49. Plaintiffs have gone well beyond "labels and conclusions" in describing the adverse actions they experienced. They allege concrete events: a firing, a forced resignation, denial of promotions, unilateral transfer, threats, harassment, and downgraded reviews. Accordingly, the Complaint adequately pleads that Plaintiffs suffered materially adverse employment actions after engaging in protected activity. This satisfies the third element of an FCA retaliation claim (when coupled with causation, discussed next).

50. Although the motion to dismiss seizes on the fact that Hack's resignation was ~10–11 months after her protected activity (Docket No. 12 at ¶ 14–15). But this argument ignores what transpired during those months – a pattern of adverse actions that began shortly after her complaints and continued thereafter. The Complaint explicitly says the pattern of unjust promotions happened "after [Plaintiffs] complained" (Compl. ¶ 60). In other words, the retaliatory harassment, threats, poor evaluations, and denial of opportunities commenced in the aftermath of Hack's report and led to her constructive discharge. Hack was dealing with

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **17** of **21**

continuous retaliatory treatment in the interim. Here, the onset was immediate: "After [Plaintiffs] complained, a campaign of harassment and bullying ensued" (Compl. ¶ 56).

51. All these facts combined paint a coherent story of retaliation: Hack spoke up about something sensitive (fraud), and her superiors responded by marginalizing her (no promotions, bad review), intimidating her (bullying, threats), and ultimately driving her out.

52. The motion's citation to *English v. Perdue* acknowledges that "other allegations" can make up for a lack of tight temporal proximity. Notably, the *English* Court opines that causation is difficult to prove and calls for a highly fact specific analysis, including an employee's past disciplinary record, an employer's departure from typical policy and procedures, and the temporal relationship between the employee's conduct and discharge might shed light on the causal component of a retaliation claim. *English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019). Plaintiff Hack here alleges a deviation from Defendants standard operating procedures for promotions and failure to follow policies in conjunction with the first time she received poor evaluations. (Compl. ¶¶ 60, 62, and 64). Additionally, the *English* court cites at least one case where seven months of retaliatory acts after the protected complaint creates plausibly close temporal proximity. *English v. Perdue*, 777 F. App'x 94, 99 (5th Cir. 2019) (citing W*ooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015)).

53. Plaintiffs have sufficient allegations of causal connections at the pleading stage. Therefore, when viewing the Complaint as a whole, there are ample facts suggesting that but for Plaintiffs' reports of fraud, Defendants would not have threatened, harassed, poorly reviewed, or terminated them. That is sufficient to plead causation. In sum, Plaintiffs have plausibly alleged that their protected activity caused Defendants to retaliate.

**B. Dismissal Is Not Warranted for Any Deficiencies in Service as it has been Cured**

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **18** of **21**

54. Defendants also moves to dismiss under Rules 12(b)(4) and 12(b)(5) due to the summons served on Defendants lacking the Clerk's signature and seal. Due to an inadvertent oversight, the copy of the summons that was served (and later filed at Docket No. 4) was missing the signature and seal. While Plaintiffs acknowledge this clerical error in the service of process, dismissal is unwarranted and unnecessary. Plaintiffs have taken swift action to correct it. On discovery of the defect (via Defendants' motion), Plaintiffs immediately obtained new summons from the Clerk with the proper seal and signature, and both Defendants have been promptly re-served with summons, making this issue moot.

### C. If the Court finds any pleading deficiency under Rule 12(b)(6), Plaintiffs request leave to amend under Rule 15(a)(2).

55. Finally, even if the Court were to conclude that some aspect of Plaintiffs' Complaint is not pleaded with sufficient detail or clarity, Plaintiffs respectfully request the opportunity to amend their Complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be "freely give[n] when justice so requires." This liberal standard reflects a strong policy in favor of resolving cases on their merits rather than on technical pleading defects. Here, Plaintiffs have not yet amended their Complaint at all; this is the first responsive motion by Defendant. If the Court identifies any shortcoming, Plaintiffs can and will provide such details in an amended pleading. Allowing such will not create undue delay, bad faith, nor undue prejudice to Defendants.

56. Therefore, if the Court is inclined to grant any portion of Defendants' Rule 12(b)(6) motion, Plaintiffs respectfully request that such dismissal be without prejudice and with leave to file a First Amended Complaint.

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **19** of **21**

## V. CONCLUSION AND PRAYER

57. For the foregoing reasons, Plaintiffs Gabriel Valdez and Cynthia Hack respectfully request that the Court DENY Defendant WellMed Medical Management, Inc.'s Motion to Dismiss and UnitedHealth Group, Inc.'s motion to dismiss in their entirety. The Complaint, when read in the light most favorable to Plaintiffs, adequately pleads a claim for retaliation under 31 U.S.C. § 3730(h) and gives Defendants fair notice of the grounds upon which it rests. Further, Plaintiffs have already obtained a corrected summons and promptly effected proper service, curing that issue, and respectfully request attempts to dismiss on defective process or summons be denied as moot. Should the Court find any aspect of the Complaint to be insufficiently pled, Plaintiffs request that the Court grant them the opportunity to seek leave to file a First Amended Complaint addressing any such issues, rather than dismissing the case. Plaintiffs pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

**HARPER LAW FIRM**
18618 Tuscany Stone, Ste. 210
San Antonio, Texas 78258
(210) 780-3881; Telephone
(210) 876-1891; Facsimile

BY: */s/ Thomas N. Cammack, III*
TAYLOR W. HARPER
State Bar No. 24091573
taylor@harperlawtx.com
THOMAS N. CAMMACK, III
State Bar No. 24073762
trey@harperlawtx.com

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*

Page **20** of **21**

## CERTIFICATE OF SERVICE

On this the 30th day of June, 2025, I hereby certify that I have served the foregoing document on all counsel and/or pro se parties of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).


Alex P. Hontos*
Minnesota State Bar No. 0388355
hontos.alex@dorsey.com
Christopher A. DeLong*
Minnesota State Bar No. 0398965
delong.christopher@dorsey.com
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)
*admitted pro hac vice

*Attorneys for Defendants WellMed Medical Management, Inc. and UnitedHealth Group, Inc.*


/s/ Thomas N. Cammack, III
THOMAS N. CAMMACK, III

**ATTORNEYS FOR PLAINTIFF**

*CYNTHIA HACK AND GABRIEL VALDEZ V. WELL MED MEDICAL MANAGEMENT, INC., AND UNITEDHEALTH GROUP, INC.*
*PLAINTIFFS' RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS*