UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GABRIEL VALDEZ, CYNTHIA HACK, | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-00438-XR |
| | § | |
| WELLMED MEDICAL MANAGEMENT, | § | |
| INC.,  UNITEDHEALTH GROUP, INC., | § | |
| *Defendants* | | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

On this date, the Court considered Defendants' Motions to Dismiss (ECF Nos. 12, 13), Plaintiffs' response (ECF No. 17), and Defendants' replies (ECF Nos. 18, 19). After careful consideration, Defendant WellMed Medical Management Inc.'s motion (ECF No. 12) is **DENIED** and Defendant UnitedHealth Group Inc.'s motion (ECF No. 13) is **GRANTED**.

## BACKGROUND

Plaintiffs Valdez and Hack sued Defendants WellMed Medical Management Inc. ("WellMed") and UnitedHealth Group Inc. ("UnitedHealth") under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). Plaintiffs allege that they were discharged after reporting fraud to supervisors, executives, and the Federal Bureau of Investigation. Defendants moved to dismiss the complaint for failure to state a claim, insufficient service of process, and insufficient process.

### I. Alleged Fraud Scheme

According to the complaint,[1] WellMed manages a network of medical professionals that serve seniors at over 16,000 facilities in Texas and Florida. ECF No. 1 at 4–5. UnitedHealth is a major American health insurer that acquired WellMed in 2011. *Id*. at 4. Both organizations receive

---

[1] Defendants responded to the complaint with the present motions and are yet to file an answer.

Medicare funding to support their operations. *Id*. at 5–6. A portion is received through reimbursement for expenses incurred. *Id*. at 6.

Plaintiffs are former employees of WellMed. ECF No. 1 at 8. While employed, they became aware of what they characterize as fraud against the government. ECF No. 7–15. They claim that a contractor, Luis Casas, provided "kickbacks" and improper gifts to WellMed officers in return for construction contracts. *Id*. Specifically, they allege that WellMed employees would improperly approve construction bids that Casas submitted to maintain WellMed facilities. *Id.* In return, Casas would provide gifts to the employees. These gifts allegedly included Louis Vuitton purses, luxury trips, a pickup truck, cosmetic surgeries, and cash payments. *Id*. at 8. Plaintiffs allege that WellMed managers went as far as to give Casas direct access to the WellMed's service management platform so that he could approve his own bids. *Id*. at 12. In all, these practices allegedly allowed Casas to make millions of dollars by fraudulently inflating his bids. *Id*. at 13.

Plaintiffs allege that a portion of WellMed's Medicare funding was improperly diverted to Casas pursuant to this fraudulent scheme and in violation of contractual requirements regarding how that money is spent. *Id*. at 6–7.

## II. Alleged Retaliation

Plaintiffs claim that they reported this fraud scheme to WellMed managers to include the company's Vice President. *Id*. at 9–10. When confronted, this executive allegedly put his fingers in his ears and said "lalalalal-I don't want to hear it." *Id*. at 10. Plaintiff Hack then reported her allegations to the FBI. *Id*. at 17.

WellMed management allegedly retaliated against Plaintiffs after they reported. Plaintiffs claim that they were passed up for promotion, stripped of responsibility, and given poor performance reviews. *Id*. at 9, 11. Plaintiff Valdez was terminated. *Id. at 17*. Plaintiff Hack alleges

that she was constructively discharged after she "had been passed over for jobs, harassed, bullied, and threatened, fearing for her safety, sanity and health." *Id*. at 11.

Plaintiffs have now brought this action seeking damages. *Id*. at 18. They assert a single cause of action: retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h).

Defendants have moved to dismiss on three grounds:

(1) failure to state a claim under Fed. R. Civ. P. 12(b)(6);

(2) insufficient service of process under Rule 12(b)(5);

(3) and insufficient process under Rule 12(b)(4).

*See* ECF No. 12, 13.

## LEGAL STANDARD

### I. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–*

*Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II. False Claims Act Retaliation

"[T]he FCA is largely a fraud statute." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023). To that end, the FCA was "designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime." *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1237 (D.C. Cir. 2012) (citations omitted). The statute includes an anti-retaliation provision that penalizes employers who take adverse action against whistleblowing employees. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) ("[T]he whistleblower provision is

intended to encourage those with knowledge of fraud to come forward."). The anti-retaliation provision states:

> Any employee, contractor, or agent shall be entitled to all relief . . . if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter [31 USCS §§ 3721 et seq.].

31 U.S.C. § 3730(h). To state a claim under this provision, a plaintiff must show:

> (1) the employee engaged in a protected activity under the statute;
>
> (2) the employer knew that the employee engaged in the protected activity; and
>
> (3) The employer discriminated against the employee because she engaged in protected activity.

*U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 603–04 (S.D. Tex. 2012); *accord United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 371–72 (5th Cir. 2011) (per curiam).

## DISCUSSION

The Court considers Defendants' arguments under Rule 12(b)(6) before turning to the sufficiency of process.

### I. Failure to State a Claim

#### A. Plaintiffs State a Claim Against WellMed

Plaintiffs properly pled each element of FCA retaliation against WellMed.

## 1. Plaintiffs Adequately Pled Protected Activity

Plaintiffs properly pled a protected activity by alleging that they reported fraud. To state an FCA retaliation claim, the employee must allege that they engaged in a "protected activity." *Shaw Servs., L.L.C.*, 418 Fed. Appx. 371–72. "A protected activity is one motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc*., 517 F. App'x 259, 262 (5th Cir. 2013). "Courts consider the internal reporting of fraudulent activity to a supervisor to be a step in furtherance of uncovering fraud, and thus protected under the FCA." *Guerrero v. Total Renal Care, Inc.*, No. EP-11-CV-449-KC, 2012 WL 899228, at *5 (W.D. Tex. Mar. 12, 2012) (citing *Robertson*, 32 F.3d at 951)); *accord United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 741 n. 9 (D.C.Cir.1998) ("[I]nternal reporting of false claims is itself an example of a protected activity.").

### i) Plaintiffs Allege That They Reported Fraud

The complaint is replete with allegations that Plaintiffs reported fraud:

(1) Hack reported "double billing to VP Casey Siere," ECF No. 1 at 13;

(2) Hack "reported the illegal use of federal funds to" a WellMed associate director, *id*. at 13–14;

(3) Hack and Valdez "reported the illegal, fraudulent, and unlawful use of federal funds to WellMed Vice President Keith McMullen," *id*. at 10;

(4) Hack "notified McMullen that the law required that Defendants file a police report due to the amount of money stolen," *id*. at 10;

(5) Valdez "complained of illegal activity and Medicare fraud," *id*. at 11;

(6) Hack and Valdez "complained of illegality, Medicare fraud, unlawful conduct, and fraudulent use of federal funds internally to Mark Feinberg, Keith McMullian, and the Compliance team," *id*. at 74; and finally

(7) Hack "went to the FBI to report the fraud, illegal activity, and exploitation of Medicare funds," *id*. at 11.

### ii) WellMed's Motion Mistakes the Issue

WellMed attempts to get around these allegations by arguing that they do not concern fraud against the government. ECF No. 12 at 13. It cites a district court opinion for the proposition that "the employee's actions must be aimed at matters demonstrating a 'distinct possibility' of False Claims Act litigation." ECF No. 12 at 11 (citing *Boston Sci. Corp.*, 864 F. Supp. 2d at 605)). WellMed argues that there can be no "distinct possibility" of FCA litigation here because Plaintiffs have not shown how WellMed could have submitted a "false claim to the government." ECF No. 12 at 13 ("Plaintiffs allege no misrepresentations to the government about these expenses to induce payment.").

But Defendants confuse the issue here. At this stage, the Court must assess whether Plaintiffs adequately pled FCA retaliation. FCA retaliation requires that Plaintiffs engaged in an activity "motivated by a concern regarding fraud against the government." *Thomas*, 517 F. App'x at 262. So the issue is whether the complaint sufficiently alleges that Plaintiffs acted because they were concerned about fraud against the government.

Defendants do not address this issue. Instead, they fixate on whether there is a "distinct possibility of FCA litigation." In doing so, Defendants are instead making a merits argument about a completely different issue: whether Defendants violated the FCA.

This issue is not before the Court. Plaintiffs have not filed a FCA qui tam suit. They need not do so to state an FCA retaliation claim. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 410 (2005) ("[A] well-pleaded retaliation complaint need not allege that the defendant submitted a false claim . . . ."). By the same token, Plaintiffs are not required to prove a claim that they did not bring to withstand a Rule 12(b)(6) motion. *See Boston Sci. Corp.*,

864 F. Supp.2d at 604–605 ("To engage in protected activity under the Act, an employee need not have filed an FCA lawsuit or have developed a winning claim at the time of the alleged retaliation." (cleaned up)); United *States ex rel. O'Neill v. Gopalam*, No. CV 18-567-JWD-RLB, 2023 WL 6396659, at *32 (M.D. La. Sept. 29, 2023) ("Defendants argue that if a Relator has not met his burden of pleading a False Claims Act claim . . . he cannot succeed in a retaliation claim . . . . The Court disagrees with Defendants' analysis.").

Plaintiffs allege that they repeatedly complained of the fraudulent use of federal funds. This meets the pleading requirement for this element.

### 2. Plaintiffs Adequately Pled Knowledge

The complaint also sufficiently alleges the second element of FCA retaliation—that the defendant *knew* that the plaintiff engaged in protected activity. *See Shaw Servs., L.L.C.,* 418 Fed. Appx. at 371–72. Reporting directly to supervisors and executives establishes knowledge. *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 32 (1st Cir. 2012) ("To clear the low bar required to establish a prima facie case, the fact that high-level . . . executives learned of the appellant's whistleblowing several months before his firing suffices to show knowledge."). Here, Plaintiffs' protected activity was the reporting of fraud. They allegedly made these reports to supervisors and executives. This satisfies the pleading requirement for employer knowledge.

### 3. Plaintiffs Adequately Pled Retaliatory Action

Finally, Plaintiffs properly pled that WellMed retaliated against them because of their protected activity. To qualify as retaliatory, the employer's action must be "materially adverse, which . . . means it well might have dissuaded a reasonable worker from engaging in protected activity." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 326 (5th Cir. 2016) (quotations omitted).

This element includes a causation component: Retaliation must be "because of" the protected activity. *Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 226 F. Supp. 3d 26, 32 (D.D.C. 2017). But "[t]he showing necessary to demonstrate the causal-link part of the *prima facie* case is not onerous." *Bos. Sci. Corp.*, 864 F. Supp. 2d at 609. "At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

### i) Plaintiffs Allege That They Were Retaliated Against

To plead this element, the complaint alleges that Plaintiff Hack:

(1)  received "2s and 3s in her performance reviews" after she reported even though she had "4s and 5s" "[e]very year" prior, ECF No. 1 at 11,

(2) "was treated less favorably than non-whistleblowers and . . . passed over for jobs," *id.*,

(3) "was provided written reprimands, harassed, bullied, threatened, and constructively discharged" "on or around June 19, 2023," *id.* at 11, 17; and

(4) was "bullied and harassed for reporting illegal use of federal funding," *id.* at 14.

As to Plaintiff Valdez, the complaint states that Valdez:

(1) "had been asked to work in the Dallas Market prior to complaining" but "[o]n or around July 18, 2022, VP Casey Sierer re-assigned Mr. Valdez to" "a slow market after he complained of illegal activity and Medicare fraud," *id.* at 11;

(2) "got terminated" "as soon as [he] complained," *id.*; and

(3) "was reassigned from his initial job duties, provided a slower market, provided reprimands, and terminated" *id.* at 17.

Additionally, both Plaintiffs allege that after they reported, there was a "pattern of employees being promoted over Plaintiffs [that] continued through the end of their employment." *Id*. at 9. They allege that these promotions were "in violation of WellMed's own policies and procedures." *Id*. They describe one instance in which a coworker was promoted "two levels above her position" against WellMed policy. *Id*. at 8–9. This promotion was over both Plaintiffs even though the coworker had inferior educational qualifications and lacked the experience that the job posting required.

If true, these allegations would constitute action that "well might have dissuaded a reasonable worker from" reporting fraud. *See Bias*, 816 at 326–27 (holding a plaintiff adequately alleged retaliatory action in claiming harassment and a change of job responsibilities). And the temporal proximity between these actions and Plaintiffs' protected activity satisfies the causation element.

### ii) WellMed Mischaracterizes *Strong* and Overlooks the Complaint's Facts

WellMed first argues that Plaintiffs failed to plead a retaliatory act based on failure to promote. According to WellMed, Plaintiffs must allege specific facts to support their qualifications for the role. *Id.* But WellMed cites only a single district court opinion for this proposition. *Id*. That case addressed a Title VII discrimination (not retaliation) claim. *Id*. It is inapplicable.

WellMed next claims that Plaintiff Hack failed to allege that her poor performance reviews "were 'pretextual or unjustified' in a non-conclusory way." ECF No. 12 at 17 (citing *Spencer v. Shell Expl. & Prod. Co.*, No. 24-20173, 2025 WL 855314, at *7 (5th Cir. Mar. 19, 2025)). But Hack did plead facts suggesting the reviews were pretextual. She alleged that she received "4s and 5s" for years before reporting, and only "2s and 3s" after. ECF No. 1 at 11.

WellMed also asserts that Plaintiffs' allegations are "conclusory and boilerplate." ECF No. 12 at 16. While some alleged retaliation may be supported by skim facts—such as Plaintiff Hack's

claim she was "harassed, bullied, [and] threatened"—there are sufficient facts in the complaint to make out retaliatory action.

Lastly, WellMed attacks the complaint on causation. ECF No. 15 at 19–20. WellMed claims that "temporal proximity alone is typically not enough" to make out a claim. *Id.* at 19 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). And because Plaintiffs rely exclusively on temporary proximity to plead the causation element, WellMed asserts that they failed to state a claim.

But WellMed mischaracterizes the authority it relies on. The *Strong* court did not "affirm[] dismissal of [a] retaliation claim for lack of but-for causation." ECF No. 12 at 19. It affirmed *summary judgment* on causation while noting that "temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." *Strong*, 482, F.3d at 808. "Unlike *Strong,* the present case does not involve evidentiary sufficiency on a motion for summary judgment but pleading sufficiency on a motion to dismiss, in which the issue is whether the allegations plausibly state a prima facie case of retaliation." *Bos. Sci. Corp.*, 864 F. Supp. 2d at 610. Plaintiffs' allegations have done so.

Plaintiffs have properly pled FCA retaliation against WellMed. WellMed's motion to dismiss (ECF No. 12) for failure to state a claim is **DENIED.**

### B. Plaintiffs Fail to State a Claim Against UnitedHealth

Plaintiffs' claim against UnitedHealth must be dismissed because they have not pled a "employer-type relationship" with UnitedHealth. The FCA's retaliation provision limits liability to "those by whom plaintiffs are employed, with whom they contract, or for whom they are agents." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 324 (5th Cir. 2016). So the complaint must set out facts alleging this relationship between Plaintiffs and UnitedHealth.

But the complaint only states that UnitedHealth "acquired WellMed" and operates the Medicare plans that "WellMed works within," ECF No. 1 at 5. There is nothing more about the relationship of Plaintiffs to UnitedHealth or UnitedHealth to WellMed.

Plaintiffs have not plausibly alleged that they were "employee[s], contractor[s], or agent[s]" of UnitedHealth. *See* 31 U.S.C. § 3730. UnitedHealth's motion to dismiss for failure to state a claim (ECF No. 19) is **GRANTED**.

## II. Inadequate Service

Defendants also move to dismiss for insufficient process and insufficient service of process. *See* Fed. R. Civ. P. 12(b)(4), (5). Plaintiffs served both Defendants with summons that lacked the Clerk's signature and seal. ECF No. 17 at 19. Plaintiffs have already corrected this oversight and re-served Defendants. *Id*. By way of prejudice, WellMed only points to its "interest in ensuring the rules are followed when it is subject to the potential stigma of the salacious . . . allegations of this lawsuit." ECF No. 12 at 23. UnitedHealth says it is prejudiced "in having to defend a lawsuit in which they have not properly been served." ECF No. 13 at 10.

"The district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process . . . ." *George v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 788 F.2d 1115, 1116 (5th Cir. 1986). Because Defendants show little prejudice and service has been perfected, the Court chooses not to do so here. *See Myrtle v. Graham*, No. CIV.A. 10-1677, 2011 WL 446397, at *2 (E.D. La. Feb. 4, 2011) ("Defendants here have not shown that Graham lacked actual notice or that he suffered any prejudice resulting from the service of process . . . .").

WellMed's motion to dismiss (ECF No. 12) for insufficient process and service of process is **DENIED**. UnitedHealth's motion to dismiss (ECF No. 13) on the same grounds is also **DENIED**.

**CONCLUSION**

For the foregoing reasons, Defendant WellMed's Motion to Dismiss (ECF No. 12) is **DENIED**.

Defendant UnitedHealth's Motion to Dismiss (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim of retaliation against UnitedHealth is **DISMISSED WITHOUT PREJUDICE.**

Plaintiffs may file any amended complaint to cure the dismissal of UnitedHealth or request an extension to do so no later than **December 8, 2025.**

It is so **ORDERED**.

**SIGNED** this 24th day of November, 2025.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE